# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

766347 ONTARIO LTD.; THE JAMES F. BOUGHNER FOUNDATION; ELLEN FRYMIRE; and SALATEEN INTERNATIONAL LTD., )

            Plaintiff, )

       vs. )

ZURICH CAPITAL MARKETS INC., et al., )

            Defendant. )

Case No. 02 c 3223

Hon. Amy J. St. Eve

DOCKETED
OCT 0 3 2002

# FILED
OCT 0 1 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:    Attached Service List

    PLEASE TAKE NOTICE that on October 1, 2002, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, a Defendants' Reply Memorandum of Law in Support of Motion to Dismiss First Amended Complaint, copies of which are herewith served upon you.

            Respectfully submitted,

            *Chadwick O. Brooker*

            Alan B. Vickery
            Philippe Z. Selendy
            Courtney R. Rockett
            BOIES, SCHILLER & FLEXNER LLP
            570 Lexington Avenue
            New York, New York 10022
            (212) 446-2300

            David P. Sanders
            Chadwick O. Brooker
            JENNER & BLOCK, LLC
            One IBM Plaza
            Chicago, IL 60611
            (312) 222-9350
            *Counsel for Plaintiffs*

29

## CERTIFICATE OF SERVICE

Chadwick O. Brooker, an attorney, hereby certifies that he served the foregoing Notice of Filing and the documents referred to therein, by causing copies of these documents to be served upon the persons on the attached Service List, in the manner indicated on said list, on October 1, 2002.

Chadwick O. Brooker

## SERVICE LIST

Michael Chabraja
Ross & Hardies
150 North Michigan Avenue
Chicago, IL 60601-7567
(312) 920-6765 (Messenger)

Constantine John Gekas
11 South LaSalle Street
Suite 1020
Chicago, IL 60603
(312) 726-4505 (Messenger)

Michael A. Alesia
Alesia, Menconi & Irsuto
1111 Plaza Drive
Suite 690
Schaumburg, IL 60173
(847) 619-3389 (FedEx)

724773

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 766347 ONTARIO LTD.; THE JAMES F. BOUGHNER FOUNDATION; ELLEN FRYMIRE; and SALATEEN INTERNATIONAL LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| -v- | ) ) ) |
| ZURICH CAPITAL MARKETS INC., et al., | ) ) |
| Defendants. | ) ) |

CASE NO. 02 C 3223

Hon. Amy J. St. Eve

**FILED**

OCT 0 1 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

DOCKETED

OCT 0 3 2002

29

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................4

ARGUMENT ......................................................................................................7

I.  COUNT I, FEDERAL SECURITIES FRAUD, SHOULD BE
    DISMISSED WITH PREJUDICE .............................................................8

    A.  Plaintiffs' Assertions of ZCM's General Control Are Inadequate .........................8

    B.  Plaintiffs Fail to Distinguish ZCM's Controlling Lender Cases ..........................12

    C.  Plaintiffs Fail to Allege ZCM's Specific Control ..................................................13

    D.  Plaintiffs Fail Adequately to Allege ZCM's Scienter .........................................15

    E.  Plaintiffs Cannot Establish a Predicate Securities
        Exchange Act Violation .......................................................................................16

        1.  Plaintiffs Fail to Allege a Material Misrepresentation or Omission ...........17

        2.  Plaintiffs Fail to Allege Transaction or Loss Causation ..............................18

        3.  Plaintiffs Abandon Their Allegations of the Allamian
            Defendants' Scienter........................................................................................18

    F.  The Federal Securities Claim is Barred by the Statute of
        Limitations ...........................................................................................................19

        1.  ZCM Properly Attached Documents and Requested Conversion
            to Summary Judgment if Necessary ...............................................................20

II.  COUNT III, AIDING AND ABETTING FEDERAL COMMODITIES FRAUD,
     SHOULD BE DISMISSED WITH PREJUDICE...............................................21

    A.  Plaintiffs Fail to Allege Aiding and Abetting by ZCM .........................................22

    B.  Plaintiffs Concede Their Failure to Allege a Predicate
        Act of Commodities Fraud ...................................................................................23

1. Plaintiffs Abandon Their Claim That ZCM Was a Principal of Asset Allocation .................................................................. 22

2. The Disclosure Document Was Not Misleading ....................... 23

III. ALL STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION .................................................. 23

IV. COUNT VI (VIOLATIONS OF ILLINOIS SECURITIES LAW) SHOULD BE DISMISSED WITH PREJUDICE .................................................. 24

    A. The Claim of Illinois Securities Fraud is Untimely ................. 24

    B. The Limited Partners Fail to Allege a Claim of State Securities Fraud ........................................................................ 25

    C. Plaintiffs Fail to Name Indispensable Parties ......................... 26

V. THE LIMITED PARTNERS LACK STANDIGN TO ASSERT COUNTS IV-VII ........................................................................... 26

VI. COUNT I FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY .................................................................... 27

    A. The Documents Negate Any Inference of Fiduciary Duty ...... 27

    B. The Limited Partners Lack Standing to Challenge the Disclaimer in the Option Agreement ....................................................... 28

    C. Plaintiffs Fail to Allege Breach ................................................ 29

    D. Plaintiffs' Attempt to Amend Their Proximate Cause Allegations is Futile ................................................................. 30

VII. COUNT II FAILS TO STATE A CLAIM FOR INDUCEMENT OF BREACH OF FIDUCIARY DUTY .................................................. 31

    A. Plaintiffs Fail to Allege Breach of MJCM ............................. 32

    B. Plaintiffs Fail to Allege Inducement by ZCM ....................... 33

    C. The Alleged Benefit to ZCM Is Negated By Public Documents ............................................................................. 34

VIII. COUNTS VI AND VII (INTENTIONAL AND NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS) SHOULD BE DISMISSED WITH PREJUDICE ..................................................................... 34

A. Plaintiffs' Allegations of Knowledge and Breach Are Insufficient ......................34

B. Plaintiffs Fail to Allege Inducement by ZCM ........................................................35

C. Plaintiffs Negate Their Own Allegations of Proximate Cause ..............................36

D. Illinois Law Does Not Recognize a Cause of Action for
Negligent Interference With Contract Alleging Only Economic Damages...........36

IX. COUNT VIII (AIDING AND ABETTING COMMON LAW FRAUD)
SHOULD BE DISMISSED WITH PREJUDICE ............................................................37

A. Plaintiffs Fail to Allege ZCM's Participation in a Fraud......................................37

B. Plaintiffs Fail to Allege a Predicate Act of Common Law Fraud .......................37

CONCLUSION ...............................................................................................................................38

# TABLE OF AUTHORITIES

**Page**

## Cases

Am. Transp. Co. v. U.S. Sanitary Specialties Corp., 118 N.E.2d 793
    (Ill. App. Ct. 1954) ..................................................................................36

Bosco v. Serhant, 836 F2d 271, 279 (7th Cir. 1987) ......................................21

Buell v. Dayson, 127 Ill. App. 3d 958, 965, 469 N.E.2d 403, 408-09
    (5th Dist. 1984) ...................................................................................25

Caiola v. Citibank, N.A., 137 F. Supp. 2d 362 (S.D.N.Y. 2001) .............................13, 29

Cannon v. Univ. of Chicago, 648 F.2d 1104, 110 (7th Cir. 1991) .........................28

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ................8

Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 453 (7th Cir. 1982) ......................37

Citizens Sav. & Loan Ass'n v. Fischer, 214 N.E.2d 612, 616 (Ill. App. Ct. 1966) ...........38

Damato v. Hermanson, 153 F.3d 464, 473 (7th Cir. 1998) .............................21, 22

Drobbin v. Nicolet Instrument Corp., 631 F. Supp. 860, 885 (S.D.N.Y. 1986) ..............14

Duhart v. Fry, 957 F. Supp. 1478, 1487 (N.D. Ill. 1997) ...............................15

Eastern Trading Co. v. Refco, Inc., 229 F.3d 617, 623 (7th Cir. 2000) .....................37

Farley v. Kissell Co., 310 N.E.2d 385, 390 (Ill. app. Ct. 1974) .........................35

FSLIC v. Shearson-American Exp., Inc., 658 F. Supp. 1331 (D. P.R. 1987) ..................14

Foman v. Davis, 371 U.S. 178, 182 (1962) ..............................................8

Fujisawa Pharm. Co. v. Kapoor, 115 F.3d 1332, 1334 (7th Cir. 1997)........................19

Gabriel Capital, L.P. v. NatWest Fin., Inc., 122 F. Supp. 2d 407, 426-27
    S.D.N.Y. .......................................................................................14

Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997) ...........8

Great Cent. Ins. Co. v. Ins. Servs. Office, Inc., 74 F.3d 778, 785 (7th Cir. 1996) ................36

Harrison v. Dean Witter Reynolds, Inc., 79 F.3d 609, 614-15
    7th Cir. 1996) ................................................................................8, 11, 14, 16, 17

Hemenway v. Peabody Coal Co., 159 F.3d 255, 261-62 (7th Cir. 1998)......................28

In re Douglas Dunhill, Inc., 22 B.R. 953, 957 (Bankr. N.D. Ill. 1982) ........................35

In re Kids Creek Partners, 212 B.R. 898, 938 (Bankr. N.D. Ill. 1997) ........................33

In re Salem Mills, Inc., 881 F. Supp. 1109, 1117 (N.D. Ill. 1995) ...............................33

In re Thrifty Oil Co., 249 B.R. 537 (S.D. Cal. 2000) ...............................................12, 13

Kurtz v. Illinois Nat'l Bank of Springfield, 534 N.E.2d 1007, 1013-1014
    (Ill. App. Ct. 1987) ...............................................................................................36

LID Assocs. v. Dolan, 756 N.E.2d 866, 885 (Ill. App. Ct. 2001) .................................30

Lowe Excavating Co. v. Int'l Union of Operating Engineers Local No. 150,
    327 Ill. App. 3d 711, 714, 765 N.E.2d 21, 25-26 (2d Dist. 2002) ........................36

Mkt. St. Assocs. Ltd. P'ship v. Frey, 941 F.2d 588, 589-90 (7th Cir. 1991) .................23

Midland Mgt. Corp. v. Comp. Consoles, Inc., 1992 WL 281354 at *3 (N.D. Ill. 1992)..............29

Mother Earth, Ltd v. Strawberry Camel, Ltd., 72 Ill. App. 3d 37, 390 N.E.2d 393,
    406 (1st Dist. 1979) ...............................................................................................29

Nielsen v. Greenwood, 849 F. Supp. 1233, 1248-49 (N.D. Ill. 1994) ............................7

Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995)......................................7

Ordower v. Feldman, 826 F.2d 1569 (7th Cir. 1987) ....................................................17

P & P Marketing, Inc. v. Ditton, 746 F. Supp 1354, 1357 (N.D. Ill. 1990) ....................7

PRM Realty Group v. Wood, No. 02 C 3396, 2002 WL 1792063, *2
    (N.D. Ill. Aug. 5, 2002) ........................................................................................38

Perminas v. Novartis Seeds, Inc., No. 00 C 4581, 2000 WL 1780249,
    *2 (N.D. Ill. Dec. 4, 2000)....................................................................................15

Proctor & Gamble Co. v. Bankers Trust Co., 925 F. Supp. 1270 (S.D. Ohio 1996) ....................12

Regnery v. Meyers, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997) ..........................................33

Roth v. Bank of Commonwealth, 1981 WL 1671, *11 (W.D.N.Y. 1981) ..................................14

Santucci Const. Co. v. Baxter & Woodman, Inc., 502 N.E.2d 1134, 1137-38
    (Ill. App. Ct. 1987) .................................................................................36

Schllunk v. Volkswagenwerk Aktiengesellscheft, 145 Ill. App. 3d 594, 602,
    503 N.E.2d 1045, 1050 (1st Dist.1986) ..................................................29

Spartech Corp. v. Apelco, Inc., 1986 WL 10365 at *2 (N.D. Ill. 1986) ....................................29

Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87,
    101 (2d Cir. 2001) ..................................................................................14

Tech. Exch. Corp. of America, Inc. v. Grant Cty, State Bank, 646 F. Supp. 179,
    183 (D. Col. 1986)...................................................................................14

Tregenze v. Great Am. Communications Co., 12 F.3d 717, 719 (7th Cir. 1993) ..................15, 21

Walker v. City of Birmingham, 388 U.S. 307, 314 (1967) ......................................................33

Wilson v. Pope, 1996 L 735576 ...............................................................................................35

Wright v. Assoc. Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994) .........................................7

## Statutes

17 C.F.R. § 4.10(e)(1)(i) ..........................................................................................................23

17 C.F.R. § 4.10(e)(2) .............................................................................................................23

17 C.F.R. § 240.12b-2 .........................................................................................................8, 11

7 U.S. C. § 1 ............................................................................................................................8

15 U.S.C § 78t(a) ...................................................................................................................16

15 U.S.C. § 78(u)-4(b)(2) .......................................................................................................15

15 U.S.C. § 78(u)-4(b)(3) .......................................................................................................19

28 U.S.C. § 1332(a) ................................................................................................................24

Fed. R. Civ. P. 8(a) ................................................................................................................28

Fed. R. Civ. P. 11(b) & (c) .....................................................................................................37

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................15

Defendants ZCM Asset Holding Company (Bermuda) Limited, *et al.* (collectively, "ZCM"), through their undersigned counsel, Boies, Schiller & Flexner LLP, and Jenner & Block, LLC, respectfully submit this brief in further support of their motion to dismiss the first amended complaint ("Compl.") filed in this action. As set forth below, the complaint should be dismissed with prejudice.

## INTRODUCTION

ZCM's opening brief showed that the limited partner plaintiffs ("limited partners" or "plaintiffs") (1) fail to state any valid claims, and (2) lack standing even to assert most of the claims in their amended pleading. While the limited partners' opposition brief improperly seeks to amend, rather than to defend, the already once-amended complaint, it does finally clarify their legal position, which is at once remarkably convoluted and fatally flawed at its most basic level.

*First*, the crux of their complaint is that "ZCM took control of the Asset Allocation fund." That surprising argument, however, rests entirely on a distorted reading of a single provision of the Option Agreement which allows Asset Allocation a limited right, without penalty, to trade in its option for a new one (*i.e.*, to substitute a new basket of securities, or Reference Portfolio, for the basket of securities on which the option may be exercised). The fact that ZCM has a reasonable right to refuse substitutions on the option has nothing to do with control over Asset Allocation.

*Second,* the limited partners now contend that the damages they suffered were a result of the 2:1 leveraging of the Six Sigma investment provided for by the Option Agreement. *See* Opp. Br. at 1 ("In mid-2001, Asset Allocation's portfolio sustained substantial losses. Even though those losses were caused or at least exacerbated by the swap, a disproportionate share was misallocated to the Fund's investors.") and 7 ("Because of the Swap, two-thirds of that loss was

mis-allocated to the investors").[1] But this leveraging – which would have tripled profits if Asset Allocation's bets had been successful – was the specific object of Asset Allocation's arm's-length contract with ZCM, and the limited partners of Asset Allocation are not entitled to walk away simply because the bets failed. The *limited* partners have no standing, and no legal or factual basis in any event, to sue ZCM for effectively lending Asset Allocation the capital required for the partnership to leverage its investments.

In their opposition brief, the limited partners improperly attempt to replead their amended complaint, to write out of existence the disclaimers and other key terms in contracts between ZCM and Asset Allocation, to have this Court ignore well-settled elements of the claims that they seek to assert, and to rely upon the Commodities Exchange Act to cure their deficient claims under the federal securities laws. The complaint and brief together are, at bottom, a bald attempt to distort and confuse the issues to get by a motion to dismiss in hopes of being able to present to a jury a completely fabricated picture of what in fact are straight-forward business dealings. As set forth below, this attempt should be rejected, and the complaint dismissed, for at least the following reasons:

*Securities Fraud Claims (Counts I and II)*

- The claims are barred by the applicable statute of limitations and equitable filing period, respectively.

- The allegation that ZCM had general control over the day-to-day operations of its counterparty Asset Allocation, an actively functioning partnership managed by general partner MJCM, is incredible on its face and inconsistent with the option agreement on which the claim is based.

- Plaintiffs do not even allege that ZCM had specific control over the challenged sales of limited partnership interests, and no such inference may reasonably be drawn from the complaint.

---

[1] As discussed below, these assertions in the brief constitute an impermissible attempt to amend the complaint in response to ZCM's argument that each of their claims failed adequately to allege that any acts of ZCM -- as opposed to the Six Sigma fraud itself -- were the proximate cause of their injuries.

- The allegations of material misrepresentations, justifiable reliance, and recklessness are all squarely negated by the relevant documents incorporated by reference in the complaint.

- Plaintiffs' allegations of scienter on the part of MJCM and Asset Allocation—which are necessary to allege a predicate violation of the Securities Exchange Act—fail to satisfy the heightened pleadings requirements of the PSLRA.

- Plaintiffs fail adequately to allege transaction causation (Counts I and II) and loss causation (Count I).

- Plaintiffs' new assertions based upon the Commodity Exchange Act ("CEA") and the regulations promulgated under the CEA cannot cure the defects in their claims for violation of the Securities Exchange Act (Count I)—nor, for that matter, create state law fiduciary duties (Count IV).

*Commodities Fraud (Count III)*

- Plaintiffs do not even attempt to allege *any* facts tending to show that ZCM either (1) had knowledge of the Allamian Defendants' alleged intent to commit a violation of the Commodity Exchange Act (much less facts showing that these parties did have such an intent) or (2) intended to aid or abet any alleged violations or omissions or (3) committed any acts in furtherance of the alleged violators' objective.

- Plaintiffs' allegations of failure to disclose a principal of Asset Allocation do not suffice to allege a primary violation of the Commodity Exchange Act, and their improper attempt to amend this claim by new assertions in their brief is futile.

*Aiding and Abetting Common Law Fraud (Count VIII)*

- Plaintiffs fail to plead with the requisite specificity under Fed. R. Civ. P. 9(b) facts showing either the commission of common law fraud by the Allamian Defendants, or ZCM's knowing and intentional participation in any of the alleged fraudulent acts.

*Other State Law Claims (Counts IV-VII)*

- Plaintiffs lack standing to assert their state law claims in Counts IV-VII because the limited partners cannot assert claims based upon generalized injuries to the limited partnership.

- The claim of breach of ZCM's alleged fiduciary duties (Count IV), conflicts with the express disclaimers of fiduciary duty in the Option Agreement (which plaintiffs lack standing to challenge).

- The claim of ZCM's knowing inducement of breach of fiduciary duties (Count V) fails because the limited partners do not even allege a breach of fiduciary duty on the part of MJCM or Asset Allocation.

- The attempt in Counts IV and V to predicate liability on the parties' compliance with the preliminary injunction order of this Court (Judge Lindberg) is against public policy and wholly unsupportable at law.

- The limited partners fail to allege facts in Count VI showing that ZCM intentionally interfered with plaintiffs' limited partnership agreements.

- The claim for negligent interference with contractual relations based on economic harm (Count VII) does not exist under Illinois law.

*All Claims*

- Plaintiffs fail to allege that ZCM proximately caused any of the limited partners' injuries.

## BACKGROUND

Asset Allocation is an investment fund that engaged in highly speculative trading for very wealthy "accredited investors." Compl. ¶ 13, Ex. 1. In May 2000, Martin James Capital Management ("MJCM"), the general partner of Asset Allocation, asked ZCM to lend Asset Allocation the necessary capital to provide 2:1 leverage for its investments: *i.e.*, for every dollar Asset Allocation had to invest in a certain security, that ZCM would lend Asset Allocation two more dollars to invest in that same security. ZCM agreed to accomplish that leveraging through an option structure. In essence, Asset Allocation made a speculative bet that, at the end of a five-year option period, the leveraged value of a group of securities selected by Asset Allocation (the "Reference Portfolio") would be greater than the cost of borrowing money from ZCM to increase the leverage of Asset Allocation's investments (the "Strike Price"). CC Ex. 2; Opp. Br. at 5. If the value of the notional Reference Portfolio did not exceed the Strike Price, the option would be out of the money and no physical securities would be transferred back to Asset Allocation.

4

Asset Allocation paid the premium required to purchase the option contract by assigning to ZCM Asset Allocation's existing interests in the securities it chose for the notional Reference Portfolio, and ZCM credited that Portfolio with three times the investment amount. CC Ex. 2, TC pp. 2-5 (showing payment of $8,821,397 premium in exchange for option on Reference Portfolio with an initial aggregate value of $26,506,296 (reflecting three times the premium amount) and an initial Strike Price of $17,684,999 (reflecting the amount of leverage extended by ZCM, or two times the premium amount)). At the end of the five-year term (or earlier, in the event of an elective early termination and payment of an early termination fee), and if and only if the value of the Reference Portfolio exceeded the Strike Price, Asset Allocation could elect either to receive the value of the Reference Portfolio or the actual securities that corresponded to the interests in the notional Reference Portfolio. *Id.* at 5-7; Opp. Br. at 5-6.[2]

During the option term, Asset Allocation retained the qualified right to specify and reallocate interests in the Reference Portfolio, and to increase or decrease the size of the Reference Portfolio, subject to ZCM's reasonable approval. CC Ex. 2, TC p. 8. This provision of the Option Agreement gave Asset Allocation a limited right to trade its option for a new option (with the same maturity) on a different basket of securities without penalty.

The Reference Portfolio selected by MJCM and Asset Allocation included, among other interests, three funds over which MJCM also had control: M.J. Diversified Fund, L.P. ("MJD"), M.J. Financial Arbitrage, L.P. ("MJFA"), and M.J. Select Global, Ltd. ("M.J. Select"). Compl. ¶ 38, Ex. 2, TC pp. 2, 5, 12.[3] ZCM accepted an assignment of Asset Allocation's interests in these

---

[2]    Just as with a secured loan transaction, ZCM collected interest on the amounts that it, in effect, lent to Asset Allocation to provide leverage, but accepted no upside or downside risk in the investments chosen for the Reference Portfolio. Compl. Ex. 2, TC p. 3.

[3]    MJCM was the general partner of both MJD and MJFA, and the investment manager of M.J. Select.

securities and then purchased additional interests in each to hedge its exposure under the option agreement. Compl. ¶ 39, Ex. 2.

In March 2001, one of the core funds that MJCM had chosen for Asset Allocation's Reference Portfolio, Six Sigma LLC ("Six Sigma"), turned out to be part of a massive Ponzi scheme and entered into receivership. Compl. ¶¶ 88(e)-(g), *passim*; Opp. Br. at 2. As a direct result, the value of Asset Allocation's hypothetical Reference Portfolio—and, hence, the value of its option—declined dramatically, eliminating ZCM's potential obligation to pay out on the call option. *Id.* Pursuant to its rights under the Option Agreement, ZCM therefore sought to liquidate the interests it had purchased to hedge its exposure on the option, including its interests in MJCM-controlled MJD, MJFA and M.J. Select.

MJCM, in its capacity as general partner of MJD and MJFA, did liquidate ZCM's interests in MJD and MJFA, but instead of paying ZCM, MJCM transferred $7.4 million of the proceeds to Asset Allocation's bank account and then paid almost $5 million of the total to its limited partners. *Id.* Despite having asserted constructive ownership over the physical securities acquired by ZCM to hedge its exposure under the option contract, Asset Allocation never paid ZCM the Strike Price and Early Termination Fee as required by the option agreement. Thus, as alleged in its complaint, ZCM suffered over $16 million in damages.

At all times, ZCM dealt with the Asset Allocation partnership—not the limited partners. The option transaction was in no way inconsistent with the Asset Allocation PPM, as the limited partners now contend.[4] But even if it were, that could not give rise to a cause of action by the limited partners against *ZCM* (by contrast to claims against Asset Allocation and its principals). For their part, however, the limited partners chose to enter into a standstill agreement with the

Asset Allocation general partner and instead sue ZCM—analogous to limited partners suing a bank that loaned money to a general partner for investments that went south.

Plaintiffs have no legal basis to assert their derivative claims against ZCM. These high net-worth limited partners had to certify their willingness and ability to lose every cent they invested in order to place highly speculative bets in Asset Allocation, an investment partnership created to engage in high-risk massively leveraged strategies that would yield very high returns if the bets worked out, and correspondingly high losses if the bets failed—which they did. ZCM, by contrast, did not invest in Asset Allocation but was defrauded by it, to the tune of over $16 million. It is simply incredible that the limited partners now seek to recover their misplaced bets from the very entity defrauded by the Asset Allocation partnership on their behalf.

For the reasons set forth below, the complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept only well-pled facts as true, and should disregard both conclusory statements of law and factual allegations that are negated by other allegations in the complaint or by the documents upon which the claims rely. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Nielsen v. Greenwood*, 849 F. Supp. 1233, 1248-49 (N.D. Ill. 1994). "The court should not strain to find inferences that do not appear from the face of the complaint." *P & P Marketing, Inc. v. Ditton*, 746 F. Supp. 1354, 1357 (N.D. Ill. 1990). Assertions raised for the first time in an opposition brief may serve as a guide to

---

[4]    ZCM respectfully requests that the Court review in their entirety the Asset Allocation Private Placement Memorandum and the Option Agreement, which are attached to the complaint as Exhibits 1 and 2, respectively. These documents are expressly incorporated by reference, and made a part of, the complaint.

permissible inferences or the utility of amendment, but "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("consideration of a motion to dismiss is limited to the pleadings"). Claims may be dismissed with prejudice where, as here, granting leave to amend would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

## I. COUNT I, FEDERAL SECURITIES FRAUD, SHOULD BE DISMISSED WITH PREJUDICE.

Unable to point to allegations in the complaint that sufficiently allege either control person liability under section 20(a) or a predicate violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78t(a) and 78j(b), the plaintiffs now: assert new but legally insufficient claims in their brief (at 17-19); contest ZCM's reliance upon controlling precedent (at 19-20); attempt to salvage their federal securities claim (at 23) by reference to a rule promulgated under the inapposite Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*; and abandon (at 24) their admittedly insufficient scienter allegations.

### A. Plaintiffs' Assertions of ZCM's General Control Are Inadequate.

To state a claim for control person liability under the federal securities laws, plaintiffs must allege that the purported "control-person actually participated in, that is, exercised control over, the operations of the person in general." *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 614-15 (7th Cir. 1996). The Securities and Exchange Commission defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2.

8

Plaintiffs allege for the first time in their brief (at 17-19) that ZCM's contractual rights and obligations with respect to the option transaction gave it control over the day-to-day activities of Asset Allocation because the option transaction was allegedly Asset Allocation's only business activity. Even if the Court were to take this new factual assertion into account (by, in effect, treating the limited partners' opposition brief as a second amendment to the complaint), the plaintiffs fail to state a valid claim.

*First*, as the limited partners concede, MJCM, Asset Allocation's general partner: (1) selected and made on behalf of Asset Allocation all investments that were later chosen by MJCM to be included in the Reference Portfolio; and (2) chose to "put" Asset Allocation into the option, a derivative investment based on the value of the hypothetical Reference Portfolio selected by MJCM. Opp. Br. at 1 and 4-5.[5]

*Second*, pursuant to paragraph 3 of the Option Agreement, upon which the limited partners rely almost exclusively (at 6, 17), Asset Allocation retained the qualified right to specify and reallocate interests in the Reference Portfolio, and to increase or decrease the size of the Reference Portfolio, subject to ZCM's reasonable approval. Compl. Ex. 2, TC p. 8. Far from giving ZCM "control over Asset Allocation," this provision gave Asset Allocation the limited right to trade its option, in effect, for a new option on a different basket of securities without penalty during the option term. Because any reallocation or change in the hypothetical Reference Portfolio altered the likely outcome of the bet, and the hedges that ZCM had to make on its own position, ZCM retained the right not to accept the new bet being offered by Asset

---

[5] The limited partners also concede that the securities purchased by MJCM on behalf of the fund and later included in the Reference Portfolio were "consistent with [Asset Allocation's] disclosed strategy." Opp. Br. at 4. They also acknowledge that, under the Option Agreement, Asset Allocation purchased a call option based on the value of these underlying securities. *Id.* at 5. Because the Asset Allocation PPM attached to the complaint as Exhibit 1 permits MJCM to purchase options on these concededly permissible securities, it necessarily follows that MJCM was permitted to purchase this call option, even though the limited partners dispute MJCM's ability to agree to certain terms contained therein.

Allocation. *Id.* ZCM's veto power could not be "unreasonably" exercised, and the constraints of that veto power were expressly delineated by the eligibility requirements in the Option Agreement (which was in complete accord with the investment and redemption policies outlined in the Asset Allocation Private Placement Memorandum ("PPM")). *Id.* at 2-3; Compl. Ex. 1.

This provision in no way curtailed Asset Allocation's right to make any investment in any fund whatsoever on its own behalf at any time. It merely governed its right to trade in its option—one derivative investment—for a different option. Neither ZCM, nor anything in the Option Agreement (Compl. Ex. 2), *required* Asset Allocation to put all of Asset Allocation's investments into the call option. Thus, MJCM was free to diversify Asset Allocation's investments, but chose at that time not to do so. Further, Asset Allocation was free to terminate the option upon payment of the Strike Price and Early Termination Fee, and to reinvest that money in any funds it wished. Compl. Ex. 2, TC p. 6. Even if it chose to keep the option, every time MJCM received a capital contribution from one of the limited partners, or any other influx of cash, it was free to use that money to make a different investment on behalf of Asset Allocation. Indeed, during the term of the option, MJCM made five other investments in various funds on behalf of Asset Allocation (which are currently the subject of the PI Order referenced in the complaint). Compl. Counts I and II, Opp. Br. at 2. Asset Allocation, through its investment manager MJCM, made its own decisions as to its investment strategy. Compl. Exs. 1 & 2.

*Third,* as a matter of law, ZCM's control over its *own* assets purchased to hedge its exposure under the option to possible appreciation of the securities included in the hypothetical Reference Portfolio, and its exercise of administrative duties under the option transaction (*i.e.*, determination of effective date of the transaction, making adjustments to bring the Maximum Strike Ratio in line, providing monthly valuations) (Opp. Br. at 17, 18, and 19), do not constitute

10

control over any of the assets or day-to-day operations of its counterparty Asset Allocation. ZCM Opening Brief ("ZCM Br.") at 7.

*Fourth*, even if plaintiffs' fundamental charge (that the Option Agreement gave ZCM control over Asset Allocation's investment decisions) were not expressly negated by their other allegations and the Option Agreement itself, this allegation would not be sufficient to allege control over Asset Allocation's "operations" or its "management and policies" in general. 17 C.F.R. § 240.12b-2; *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 614-15 (7th Cir. 1996). The call option was *not* Asset Allocation's only business for purposes of determining control. As plaintiffs themselves allege, Asset Allocation was a functioning limited partnership that: (1) solicited investors; (2) prepared and distributed offering memoranda; (3) sold partnership interests; and (4) administered partnership accounts including receipt of contributions and payment of redemptions on behalf of numerous limited partners. Compl. ¶¶ 13-16, 28, 31, 50-55, 59, 61. As demonstrated by complaint Exhibit 1, Asset Allocation, through its general partner MJCM, also: (1) hired and supervised accountants and auditors; (2) prepared and distributed partnership account and fund financial statements; (3) conducted market research; (4) engaged in banking transactions; and (5) created and executed management and human resource policies. Compl. Ex. 1 pp. 1-4, 6-7, A-2 – A-5.

In sum, Plaintiffs still do not allege, and cannot in good faith allege, that ZCM had *any* control over the day-to-day operations of Asset Allocation, nor do any of the existing allegations permit such an inference.[6] On this ground alone, Count I should be dismissed with prejudice.[7]

---

[6] Plaintiffs' other new assertion (at 19) that "ZCM controlled everything" is, of course, legally insufficient because it is wholly conclusory. *Northern Trust Co.*, 69 F.3d at 129; Fed. R. Civ. P. 9(b).

[7] Similar baseless allegations of ZCM's control over Asset Allocation are made in the First Amended Complaint at ¶¶ 36, 41-43, 48, 49, 56(a) & (b), 62, 64, 70(e), 71(a) & (d), 72(b) & (c), 79, 82, 84(a), 87, 88(a), 92(b), 93(b), 99 and 100. For the reasons discussed above, all claims that rely on these allegations to state an element of the claim must also be dismissed.

**B.** **Plaintiffs Fail to Distinguish ZCM's Controlling Lender Cases.**

Plaintiffs criticize ZCM for analogizing the option transaction to a secured loan and citing cases analyzing control person liability in that context. Opp. Br. 19-21. They contend that the option transaction is not a loan agreement despite its substantive effect, and cite repeatedly to *In re Thrifty Oil Co.*, 249 B.R. 537 (S.D. Cal. 2000), a case involving an interest rate swap. *Id.* Plaintiffs even improperly allege that ZCM's use of this analogy somehow threatens the viability of a prior ruling of the Court. Addressing these arguments in reverse order:

*First*, ZCM's position has been consistent from the inception of this case. ZCM has always asserted that the contract at issue is an option agreement whose purpose and effect was to provide leverage to Asset Allocation's speculative investments. More importantly, ZCM has always maintained that ZCM had sole right, title and interest to the assets it in fact purchased to hedge the interests in the hypothetical Reference Portfolio. ZCM's actual ownership of those *hedging* interests is wholly different and apart from Asset Allocation's determination of what assets should be deemed part of the *notional* Reference Portfolio. Asset Allocation never had a right to any physical securities under the Option Agreement and could not have had such a right absent its (1) exercise of the call option, (2) payment of the strike price, and (3) prior written demand for physical settlement. The assets purchased by ZCM to hedge its exposure under the contract—in ZCM's sole discretion and for its sole benefit—never had any bearing on Asset Allocation's ownership or non-ownership of physical securities under the Option Agreement.

*Second*, the option transaction here was not an interest rate swap; Asset Allocation made a leveraged bet based on the increase or decrease in the value of certain securities, not the rise and fall of interest rates. Plaintiffs' reliance on *Thrifty Oil* and *Proctor & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270 (S.D. Ohio 1996) (interest rate swap is not note or evidence of

indebtedness), is thus misplaced. *Caiola v. Citibank, N.A.*, 137 F. Supp. 2d 362 (S.D.N.Y.

2001), *rev'd on other grounds*, 2002 WL 1401478 (2d Cir. Jun. 27, 2002) also relied upon by

Plaintiffs, is equally inapposite. In *Caiola*, neither party even contended that the agreement at

issue was a note or evidence of indebtedness.

    *Third*, regardless of how the transaction is characterized, the cases cited by ZCM show

definitively that ZCM *cannot* have "control person" liability under the securities laws. It is clear

that entities that exercise significantly more control over the day-to-day administration of the

primary wrongdoer than that allegedly exercised by ZCM are not control persons within the

meaning of the Securities Exchange Act. ZCM Br. 8.[8] Indeed, the cases cited by plaintiffs (at

20) provide further support to this argument, as *none* of the control allegations upon which

liability rested in those cases is (or can responsibly be) made by plaintiffs here.[9]

## C.    Plaintiffs Fail to Allege ZCM's Specific Control.

    Plaintiffs concede (at 16) that they must allege facts showing that ZCM "possessed the

power or ability to control the specific transaction or activity upon which the primary violation

was predicated": namely, the issuance of Asset Allocation's PPM (which occurred *prior* to the

Option Agreement between Asset Allocation and ZCM) and Asset Allocation's alleged

subsequent misrepresentations and omissions made in connection with the sale of partnership

---

    [8]    Contrary to plaintiffs' unsupported assertion (at 21), none of the cases cited by ZCM (at 8) holds that "if a lender or other party takes control of the corporation beyond the usual activity of a lender, it becomes a Section 20 'control person.'"

interests. *Harrison*, 79 F.3d at 614. The amended complaint alleges that ZCM had "control over the specific operations of Asset Allocation and/or MJ[CM], that is, the allocation of investments made by Asset Allocation and the actual investment made with Asset Allocation assets." Compl. ¶ 49.

Plaintiffs now abandon that pleading and instead rely upon the bizarre new assertion (at 18) that, because ZCM had the right of reasonable refusal to accept a trade-in of the basket of securities on the option, ZCM somehow also had "control and authority over any sales activities by [MJCM] including the preparation and issuance of the offering documents." The limited partners explain their inferential leap as follows: "*[i]t is easy to imagine*" that, just as buffaloes might have wings, "ZCM could simply have refused any changes to the Reference Portfolio until the offering documents [of Asset Allocation] were amended" to conform to plaintiffs' newly formulated criteria.

Plaintiffs thus propose that this Court adopt, as a standard of liability under federal and state securities laws, that any option-seller to an investment fund can and must use its economic leverage with respect to an arm's-length option contract (1) to oversee and control the issue of private placement memoranda by the fund, (2) to oversee and control every sale of an interest in the fund, and (3) thereby to adopt fiduciary duties to the fund and its investors (regardless of specific disclaimers of any such responsibility in the option agreement). This standard has no

---

[9]    *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2ᵈ Cir. 2001) (primary violator was an *officer of lender* and had primary responsibility for dealings between lender and plaintiff); *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 426-27 (S.D.N.Y. 2000) (defendant-lender was *parent company* of primary violator); *Roth v. Bank of Commonwealth*, 1981 WL 1671, *11 (W.D.N.Y. 1981) (lender *participated in and promoted* primary violator's fraudulent scheme); *Tech. Exch. Corp. of America, Inc. v. Grant Cty. State Bank*, 646 F. Supp. 179, 183 (D. Col. 1986) (bank alleged to have retained real estate consultants and accountants, attempted property sales, required expenditure approval, and ratified sales contracts in connection with primary violator's residential development project); *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 885 (S.D.N.Y. 1986) (lender had *right to appoint majority of board* of primary violator). *FSLIC v. Shearson-American Exp., Inc.*, 658 F. Supp. 1331 (D. P.R. 1987) is inapposite because it addresses only the issues of scienter and defendant's affirmative defense of "good faith"—not the sufficiency of the control allegations.

14

basis in law. While the Court may be required to draw "reasonable inferences" from any well-pled allegations in plaintiffs' favor, and may in its discretion accept plaintiffs' new opposition brief assertions as a further amendment to the already-amended complaint, it is not required to draw wholly irrational inferences of control based on imaginative bases of legal responsibility. *Duhart v. Fry*, 957 F. Supp. 1478, 1487 (N.D. Ill. 1997).

Accordingly, Count I should be dismissed with prejudice.

**D.      Plaintiffs Fail Adequately to Allege ZCM's Scienter.**

The limited partners over-simplify and mistate the law with respect to both the requisite scienter on the part of ZCM and this Court's authority in ruling on a motion to dismiss. As ZCM stated in its opening brief (at 6 n.8), it is a statutory defense to control person liability if the defendant "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation." 15 U.S.C. § 78t(a). As the Seventh Circuit held in *Harrison*: "Because of this good faith defense and the scienter element required for the underlying 10b-5 fraud claims," the district court properly charged the jury that the alleged control person "could not be liable . . . for its mere negligence, but only if it acted recklessly." 79 F.3d at 615. Recklessness is

> "conduct highly unreasonable, involving 'not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, which presents a danger of fraud which is better known to the actor in this case, . . . or is so obvious that [the defendant] must have been aware of it."

*Id.* Further, pursuant to the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that [defendant] acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2).[10] The limited partners do not allege such requisite scienter on the part of ZCM.

---

[10]      In addition, this Circuit has long recognized that it is appropriate to dismiss a claim under Fed. R. Civ. P. 12(b)(6) when a successful affirmative defense appears on the face of the complaint. *Tregenze v. Great Am. Communications Co.*, 12 F.3d 717, 719 (7th Cir. 1993) (if a party "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"); *Perminas v. Novartis Seeds, Inc.*, No. 00 C 4581, 2000 WL 1780249, *2 (N.D. Ill. Dec. 4, 2000).

The claim should be dismissed because the establishment of a successful statutory affirmative defense (*i.e.*, that ZCM *did not* "directly or indirectly induce the act or acts constituting the violation," 15 U.S.C. § 78t(a)) is plain from the face of the complaint and documents attached thereto. No nexus can be drawn between ZCM's alleged conduct and the alleged principal violation of the federal securities laws: entering into the option agreement *after* the issuance of the PPM of Asset Allocation cannot be the basis of inducing a violation of the securities laws through statements that were allegedly *false when made* in the PPM.

In any event, even if the temporal order of events were reversed, the Opinion Letter of Asset Allocation's legal counsel—which attests to the proper ability and authority of Asset Allocation to purchase the option from ZCM—confirms that ZCM could not have acted recklessly in entering into the Option Agreement.[11] Because plaintiffs have failed to state with particularity facts giving rise to a strong inference that ZCM's conduct represented an extreme departure from the standards of ordinary care, or that the alleged securities fraud was so obvious that ZCM must have been aware of it (15 U.S.C. § 78u-4(b)(2); *Harrison*, 79 F.3d at 615), the Court should also dismiss Count I on this ground.

E. **Plaintiffs Cannot Establish a Predicate Securities Exchange Act Violation.**

Even if the limited partners could allege control or scienter on the part of ZCM, they utterly fail to make the threshold allegations of a predicate Securities Exchange Act violation that are required to prove control person liability. *Harrison*, 79 F.3d at 617.

16

### 1. Plaintiffs Fail to Allege a Material Misrepresentation or Omission.

Unable to support their key argument—that the May 24, 2000 Asset Allocation PPM issued *prior* to the existence of the Option Agreement contained material misrepresentations that were false *when made* because of the *subsequent* Option Agreement—with any legal authority relating to securities fraud, plaintiffs rely (at 23) on an argument that that the Allamian Defendants committed securities fraud because a regulation promulgated under the Commodity Exchange Act supposedly required them to issue a new PPM after entering into the Option Agreement.

The assertion cannot save plaintiffs' defective claim under the Securities Exchange Act. Plaintiffs fail to cite any similar provision of the Securities Exchange Act or the rules promulgated thereunder, or how the ostensible violation of the CEA regulation gives rise to a claim for violation of § 10(b) of the Securities Exchange Act or, more importantly, control person liability under § 20(a).[12] Perhaps more fundamentally, as explained above and in ZCM's opening brief, there was no need to issue a revised PPM because the Option Agreement did *not* transfer control over Asset Allocation's investment decisions to ZCM, and therefore even the CEA regulation is not implicated here.[13]

---

[11]    The limited partners raise no valid challenge to the Opinion Letter. *First*, ZCM's counsel provided the Option Agreement *with the accompanying Legal Opinion* to the limited partners in discovery. *Second*, the limited partners are not entitled to mislead the Court by attaching to their pleading an incomplete copy of the agreement. *Third*, contrary to the limited partners' assertion, the Legal Opinion addresses the ISDA Master Agreement "and any related documentation as may be required for the completion of the transaction between the parties (collectively, "the Agreements")." *Fourth*, ZCM is not using the "advice of counsel" as a defense to a claim of securities fraud, but rather to show its good faith and lack of recklessness in the context of control person liability as expressly permitted by statute. Finally, it is frankly irresponsible to argue that an opinion letter is invalid if it is issued by an attorney who is related to a principal of the fund, here Martin Allamian's brother. There are no such prohibitions in the Rules of Professional Conduct, and there is no basis for drawing such an adverse inference.

[12]    This Circuit recognizes that violations of the Securities Exchange Act and the Commodity Exchange Act give rise to separate and distinct causes of action. *E.g., Ordower v. Feldman*, 826 F.2d 1569 (7th Cir. 1987).

[13]    Plaintiffs apparently abandon their allegations of reliance on supposed subsequent written and oral communications by Asset Allocation that, as ZCM showed in its opening brief (at 11), are expressly negated by the subscription agreements.

17

Further, their own allegations negate the separate allegation that the PPM was materially misleading because the Option Agreement "terminated or substantially interfered with the[ir] monthly redemption rights." If anything, Asset Allocation's inability to honor these requests was caused in the first instance, by its Six Sigma and other investment losses, and in the second instance, by this Court's preliminary injunction order expressly prohibiting the payment to the limited partners -- not the Option Agreement.

### 2. Plaintiffs Fail to Allege Transaction or Loss Causation.

Plaintiffs (at 23 & n.14) attempt to counter ZCM's arguments (at 12-13) with respect to transaction causation by claiming that "the Swap was not leverage at all." This is directly contrary to the actual terms of the Option Agreement (incorporated by reference in the complaint), which specifically provides for 2:1 leverage. Plaintiffs acknowledge as much with their argument (at 7) as to the allocation of two-thirds of the Six Sigma loss.

Plaintiffs' new formulation as to loss also undercuts their own allegations of loss causation. Plaintiffs' claim that the facts unknown to them at the time they purchased their interests in the summer and fall of 2000 caused their damages (Compl. ¶ 74) cannot survive in light of their new argument that their losses in fact resulted from ZCM's supposed exercise of its powers under the Option Agreement "to mis-allocate" to investors two-thirds of the Six Sigma loss that did not occur until mid-March 2001.

### 3. Plaintiffs Abandon Their Allegations of the Allamian Defendants' Scienter.

Once again plaintiffs cannot overcome the insurmountable barrier of the scienter requirement. Unable to rebut ZCM's argument in its moving brief (at 13-14) regarding the fatal flaws in plaintiffs' allegations of scienter on the part of the Allamian Defendants at Compl. ¶¶ 70-72, the limited partners abandon these allegations and argue now (at 24) that sufficient

18

allegations of scienter can be found at Compl. ¶¶ 50-61. This fourth attempt to direct this

Court's attention to allegations of scienter fares no better than the first three. Indeed, nothing in

¶¶ 50-61, which merely describe alleged oral and written communications from the Allamian

Defendants and plaintiffs' acquisitions of interests in Asset Allocation, alleges particular facts

giving rise to a strong inference of the requisite intent to defraud, as required by the PSLRA, 15

U.S.C. § 78u-4(b)(3).

Accordingly, because the limited partners' numerous unsuccessful attempts to cure these

defects demonstrates that amendment is futile, Count I should be dismissed with prejudice.

**F.      The Federal Securities Claim is Barred by the Statute of Limitations.**

The parties agree that the controlling precedent in this Circuit as to when the one-year

statute of limitations begins to run is *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th

Cir. 1997). Plaintiffs' apparent argument that the statutory period does not begin to run until

they have *all* facts necessary to bring suit has been expressly rejected as an "untenable gloss" on

the inquiry notice rule. *Id.* at 1335. The existence of "suspicious circumstances" can start the

running of the one-year period where, as here, the plaintiffs have easy access to all information

necessary without the need to resort to legal process to determine whether they have been misled.

*Id.* at 1334-36. Not only did plaintiffs have immediate access to all relevant information, but

Asset Allocation mailed directly to them all information necessary to put them on inquiry notice

of the supposed claims. ZCM Br. 14-15. Plaintiffs had written notice of: (1) the use of

substantial leverage; (2) ZCM's involvement with the Fund; and (3) Asset Allocation's

investment in Six Sigma.

Plaintiffs argue only that they were not provided with notice of ZCM's control over Asset

Allocation. The argument fails for two reasons. *First*, as a matter of law, and as shown above,

19

there was no control to disclose. *Second*, the limited partners had access, upon reasonable inquiry, to the very documents relating to the Option Agreement on which they now make their absurd allegations of control.

As discussed below (Point F1), the Court is entitled to consider these documents in assessing ZCM's statute of limitations defense.

### 1. ZCM Properly Attached Documents and Requested Conversion to Summary Judgment if Necessary.

The documents attached to the Aspen Declaration are properly before this Court because they are referred to by, and central to, the complaint. Plaintiffs expressly allege that: (1) they were limited partners of Asset Allocation who invested various amounts between June and November 2000 (Compl. ¶¶ 1-4, 52, 53, 57, 58); (2) their rights and MJCM's duties are governed by the limited partnership agreement and Asset Allocation PPM attached as Exhibit 1 that they received and relied upon (Compl. ¶¶ 16, 28, 51, 52, and *passim*); (3) one of MJCM's duties pursuant to the PPM was to provide monthly statements to all limited partners (Compl. Ex. Ex. 1 at A-5 ¶ 9); and (4) between June and November 2000 they received and relied upon monthly written submissions from Asset Allocation (Compl. ¶ 61). Therefore, the monthly statements with accompanying cover letters sent by MJCM to the limited partners (Exhibits A, B, D and E) are expressly referred to by, and central to, Plaintiffs' claims. Indeed, specific reference is even made to the paragraph in Exhibit A regarding the 15% single-advisor cap (Compl. ¶ 61). Specific reference is also made to Boughner's and Ontario's August 2000 subscription to Asset Allocation (Compl. ¶ 53) evidenced in Exhibit C.

It is unfortunate that plaintiffs have chosen to waste this Court's time by challenging (at 25-26) the authenticity and source of these documents. As evidenced by their bates stamp numbers, and as the limited partners are fully aware, Exhibits A through D were produced by

Asset Allocation and MJCM in discovery, and Exhibit E was produced by plaintiffs' own

counsel. If plaintiffs refuse to withdraw their challenge to the authenticity of these documents

despite the strictures of Fed. R. Civ. P. 11, this portion of ZCM's motion should be converted to

one for partial summary judgment.[14]  At such time ZCM will provide a Local Rule 56.1

statement, Fed. R. Civ. P. 56(e) supporting affidavits to authenticate the documents, and even

deposition testimony from Martin Allamian establishing that these claims are time barred as a

matter of law.[15]

    For all these reasons, Count I should be dismissed with prejudice.

## II.  COUNT III, AIDING AND ABETTING FEDERAL COMMODITIES FRAUD, SHOULD BE DISMISSED WITH PREJUDICE.

    In response to ZCM's motion to dismiss, plaintiffs have attempted to rewrite the required

elements of an aiding and abetting claim, and to amend their claim via their brief.  Neither effort,

however, salvages their fatally defective claim.

### A.  Plaintiffs Fail to Allege Aiding and Abetting by ZCM.

    To state a claim for aiding and abetting commodity fraud, a plaintiff must allege that the

defendant (1) had knowledge of the defrauder's intent to commit a violation of the Commodity

Exchange Act ("CEA"), (2) had the intent to further that violation, and (3) committed some act

in furtherance of the defrauder's objective. *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir.

1998); *see also Bosco v. Serhant*, 836 F.2d 271, 279 (7th Cir. 1987) ("Aiding and abetting in the

---

[14]    Contrary to plaintiffs' baseless assertion (at 25 n.16)  that such a conversion would constitute reversible error, it is common practice in this Circuit to convert a motion to dismiss based on the statute of limitations defense into one for partial summary judgment. *E.g., Tregenza v. Great American Communications Co.*, 12 F.3d 717, 719 (7th Cir. 1993).

[15]    Tellingly, plaintiffs do not deny receiving Exhibits A, B, D and E.  Nor do they address the statement in the Asset Allocation PPM attached to their own complaint that disclosed: "The General Partner is currently considering the use of leverage for the Fund." Compl. Ex. 1, p. 13, 15 (disclosing risk of using "Substantial Leverage").  Further, it defies logic to argue that the documents prove that Asset Allocation fraudulently concealed ZCM's involvement, when Exhibits A, B and D clearly state that Asset Allocation had a large amount of cash at ZCM and owed millions of dollars as indicated in its accounts payable disclosure.

criminal law [upon which the CEA is modeled] requires not only knowledge of the principal's

objective but a desire to help him attain it."). ZCM established in its opening brief (at 16-19)

that plaintiffs fail sufficiently to allege any of these required elements.

In what arguably amounts to an admission of this failure, Plaintiffs attempt (at 15) to

recast the elements of an aiding and abetting claim to fit the allegations in their complaint.

Plaintiffs argue that they need allege only "knowledge of the primary violation," *id.*, rather than

knowledge of the violator's intent to commit the violation. Further, rather than allege an intent

to aid the alleged violation (*i.e.*, not issuing a revised offering memorandum and failure to

disclose a principal of the commodity pool operator) and the commission of acts in furtherance

thereof, the limited partners rely upon the mere allegation that "ZCM knew that the Swap. . .

.[was] not disclosed in the Disclosure Documents" [which, of course, were issued before the

agreement even existed], and "undertook various acts *in furtherance of the Swap Agreement.*"

*Id.* (emphasis added). Because these allegations are insufficient to state a claim for aiding and

abetting commodities fraud, *Damato*, 153 F.3d at 473 (stating necessary elements), Count III

should be dismissed on this ground alone.

### B. Plaintiffs Concede Their Failure to Allege a Predicate Act of Commodities Fraud.

#### 1. Plaintiffs Abandon Their Claim That ZCM Was a Principal of Asset Allocation.

In its opening brief (at 19-20), ZCM established that plaintiffs' allegation of a predicate

act of commodity fraud arising from the failure to disclose that ZCM was a principal of Asset

Allocation, the *commodity pool*, (Compl. ¶ 84(a)) on its face fails to allege the predicate violation

of failure to disclose a principal of *a commodity pool operator*, here, MJCM. The limited

partners acknowledge (at 10-14) that the applicable regulation requires only the disclosure of a

principal of the *commodity pool operator*, and attempt to restate their claim as based on the non-alleged assertion that ZCM itself was a principal of MJCM.

Even if this Court were to allow another belated amendment, the assertion is futile. As ZCM shows in Section I above, *nothing* in the Option Agreement (and certainly not ZCM's ability to refuse to allow Asset Allocation to trade in its option for a new one during the option term), made ZCM a principal of MJCM "having the power, directly or indirectly, through agreement or otherwise, to exercise a controlling influence over the activities of the entity." 17 C.F.R. § 4.10(e)(1)(i) (defining the term "principal").[16]

### 2. The Disclosure Document Was Not Misleading.

For the same reasons stated in Section I above, the Asset Allocation PPM was not materially misleading for failing to disclose ZCM's alleged absolute control over Asset Allocation's investment decisions because no such control existed. Further, the Asset Allocation PPM did disclose all principals of MJCM. Compl. Ex. 1 p. 6.

For all these reasons, Count III should be dismissed with prejudice.

### III. ALL STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

If Counts I and III are dismissed, this Court should dismiss Counts II and IV-VIII for lack of subject matter jurisdiction. As ZCM noted in its opening brief, the Court lacks diversity jurisdiction over the state claims because there are both Illinois plaintiffs (Frymire), and Illinois defendants (MJD and MJFA). *See Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 589-590 (7th Cir. 1991) (to determine whether diversity exists with respect to limited partnership, court looks to citizenship of all general and limited partners). Plaintiffs (at 26) completely ignore the

---

[16]    Therefore, as a matter of law, ZCM cannot be a "trading principal" either, as such a person must first be a "principal" of the entity at issue. 17 C.F.R. § 4.10(e)(2) (defining the term "trading principal").

fact that they have named MJD and MJFA as defendants, and argue only that Plaintiffs are diverse from the ZCM Defendants. Moreover, as shown below, Asset Allocation and MJCM, both Illinois entities, are indispensable parties/defendants whose presence would also destroy diversity jurisdiction. *See infra*, p. 26 & n.18. Accordingly, this Court lacks diversity jurisdiction over, and should dismiss, all state law claims. 28 U.S.C. § 1332(a).

Plaintiffs' reference (26) to "ZCM's own state law claims" is puzzling as no such claims exist in this action. Although plaintiffs Ontario, Boughner, and Salateen have been granted permission to intervene in the main action, the Court did not indicate that granting the intervention motion would have any impact on the Court's need to make individual determinations with respect to the separate and distinct outstanding motions to dismiss the first amended counterclaims filed in the main action, and the first amended complaint filed herein. Indeed, such could not possibly be the case because Plaintiff Frymire was not a party to the intervention motion. Further, if the claims filed by the Intervenors in the main action are to be taken into consideration then the Court must certainly dismiss all such claims for lack of diversity jurisdiction because the Intervenors have filed claims in the main action against several additional Illinois defendants, including MJCM and Asset Allocation.

Accordingly, this Court plainly lacks diversity jurisdiction over the state claims asserted herein.

## IV. COUNT II (VIOLATIONS OF ILLINOIS SECURITIES LAW) SHOULD BE DISMISSED WITH PREJUDICE.

### A. The Claim of Illinois Securities Fraud Is Untimely.

Plaintiffs wrongly contend that the equitable six-month notice period does not begin to run until plaintiffs have actual knowledge of voidability, knowledge usually obtained only after consultation with an attorney. Indeed, the very case upon which they rely holds that (1) "the

24

statute does not require actual knowledge that the sale is voidable"; (2) the period runs "from the date that the purchaser acquires constructive knowledge of voidability"; and (3) although such knowledge can come from an attorney, "that knowledge may be obtained from other sources as well." *Buehl v. Dayson*, 127 Ill. App. 3d 958, 965, 469 N.E.2d 403, 408-09 (5[th] Dist. 1984). In *Buehl*, where the purchase was voidable for failure to comply with registration procedures, the Court acknowledged that plaintiff would have constructive knowledge of voidability upon learning of such non-registration. *Id.*

Here, the plaintiffs allege the sale of their limited partnership interests were voidable because they were based upon misrepresentations in the Asset Allocation PPM. ZCM has established that plaintiffs knew of these alleged misrepresentations and had constructive knowledge of their voidability theory and claim as early as July 2000, or at the absolute latest by April 2001. ZCM Br. 14-15. Plaintiffs thus failed to comply with the prescribed notice period when they served their notice of claim on April 3, 2002. The allegations that (1) Boughner, is an accredited investor who invested over $1 million dollars in Asset Allocation on behalf of Ontario Ltd. and the James F. Boughner Foundation, Canadian investment corporations, and (2) Ellen Frymire and her husband James Cone, are both accredited investors who invested over $1.3 million in Asset Allocation on behalf of Frymire and Salateen International, Ltd, a Bahamian corporation (Compl. ¶¶ 1-4, 53, 57 and 58), prohibit the inference that plaintiffs did not have constructive knowledge of voidability until they consulted with counsel.

**B.     The Limited Partners Fail to Allege a Claim of State Securities Fraud.**

Plaintiffs concede (at 29) that, to state a claim under 815 ILCS 5/12 and 5/13, they must allege "a material misrepresentation or omission, reasonable reliance, and transaction causation." ZCM has clearly established that the allegations of Count I, incorporated by reference in Count II

(Compl. ¶ 77), fail sufficiently to allege any of these required elements. ZCM Br. 21-22 and Point I(A) above. Further, plaintiffs do not sufficiently allege (nor can they allege) that ZCM is a "controlling person . . . who shall have participated or aided in making the sale." 815 ILCS 5/13. See ZCM Br. 7-9, 22, and *supra*, Points I(A), (C). Accordingly, the limited partners fail to allege any basis for liability under the Illinois securities laws.

### C. Plaintiffs Fail to Name Indispensable Parties.

Plaintiffs do not even attempt to rebut ZCM's arguments in its opening brief (at 22-23) that the limited partners' state securities claim must be dismissed for failure to name indispensable parties.[17]

For all these reasons, Count II should be dismissed with prejudice.

## V. THE LIMITED PARTNERS LACK STANDING TO ASSERT COUNTS IV-VII.

Contrary to plaintiffs' assertion (at 31), ZCM does not contend that the limited partners lack standing to bring a claim for breach of contract in the event that they suffered an individualized harm (*e.g.*, the breach of contract claims that they have filed against Asset Allocation and MJCM in their third and fourth pleadings in the main action in connection with their alleged failure to honor individual redemption requests). Rather, ZCM contends, based on controlling precedent, that the limited partners lack standing to bring any claim where, as here, they are alleging harm that is purely derivative of the generalized damages suffered by the partnership (*i.e.*, the dramatic loss in value of Asset Allocation as a result of the Six Sigma investment) and shared by all limited partners.

---

[17]    Plaintiffs' argument (at 26-27) that Asset Allocation and MJCM are not indispensable parties to their claims because ZCM can allege third-party claims against them is specious. ZCM is not seeking to rescind any limited partnership interests in Asset Allocation and there is no basis in law to allow the limited partners to receive such a reimbursement from ZCM and to require ZCM, in turn, to sue Asset Allocation for contribution.

Plaintiffs fail to address a single case cited by ZCM in support of its standing argument, and do not even contest the generalized nature of their alleged damages. To the contrary, plaintiffs' new "allegations" in their opposition brief reaffirm the generalized nature of the damages alleged. *See* Opp. Br. at 1 ("In mid-2001, *Asset Allocation's portfolio* sustained substantial losses. Even though those losses were caused or at least exacerbated by the swap, a disproportionate share was misallocated to the Fund's investors." (emphasis supplied)), 2 ("In late March 2001 . . . [MJCM] discovered that one of the investments in Asset Allocation's Reference Portfolio covered by the swap was a Ponzi scheme and was completely worthless. ZCM claimed that Asset Allocation's investors should bear that loss in full"), 7 (same, plus "Because of the Swap, two-thirds of that loss was mis-allocated to the investors").

Plaintiffs inexplicably ignore the argument and address (at 31) fiduciary duties owed by a commodity pool operator (MJCM) to investors in a commodity pool (Asset Allocation) under the Commodity Exchange Act and the philosophy behind the Securities Exchange Act. Neither issue has any bearing on the standing of limited partners to allege state law claims seeking to recover generalized damages to a limited partnership and their interests therein.

Accordingly, ZCM rests on the arguments in its original brief (at 23-24).

## VI. COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

### A. The Documents Negate Any Inference of Fiduciary Duty.[18]

Because Asset Allocation itself expressly *disclaimed* the existence of any fiduciary duty owed by ZCM to the Fund arising from the transactions contemplated by the Option Agreement (Compl. Ex. 2, TC ¶ 8), plaintiffs now argue (at 32-34) that (1) the sole source of ZCM's alleged

27

fiduciary duty is the Commodity Exchange Act; (2) ZCM owed fiduciary duties to the Asset

Allocation investors because it was a principal of MJCM, the commodity pool operator; and (3)

the terms of the Option Agreement are irrelevant to their claim.[19]  These arguments, however, do

not salvage their facially defective claims.

     As ZCM clearly established in Sections I and II above, as a matter of law, ZCM is neither

a principal nor trading principal of MJCM (or Asset Allocation for that matter).  Therefore, the

only way that ZCM could have assumed MJCM's fiduciary duties would have been via the

Option Agreement which, unfortunately for plaintiffs, brings them right back to the dispositive

disclaimer provision in the agreement.

    **B.**    **The Limited Partners Lack Standing to Challenge the Disclaimer in the
Option Agreement.**

    Plaintiffs argue (at 32-33) that the disclaimer is unenforceable because (1) under Illinois

law, it is part of a contract supposedly executed in fraud; and (2) under New York law, the

disclaimer is invalid because it supposedly operates to protect perpetrators of fraud.

    But, as with their entire claim of breach of fiduciary duty, the Asset Allocation limited

partners, who were not parties to the contract between Asset Allocation and ZCM, lack standing

to challenge the disclaimer in the contract, and offer no reason why this Court should hear their

specious derivative claims.[20]

---

[18]    As a threshold matter, Plaintiffs' reliance on the notice pleading requirements of Fed. R. Civ. P. 8(a) is
misplaced.  It is well settled that even under this standard, a plaintiff must sufficiently allege a predicate for finding
the existence of every element of a claim, *Cannon v. Univ. of Chicago*, 648 F.2d 1104, 1110 (7th Cir. 1981), and a
plaintiff can "plead himself out of court" by alleging facts that negate the existence of a necessary element.
*Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261-62 (7th Cir. 1998).

[19]    Plaintiffs' argument that the Option's disclaimer applies only to the Option Agreement and not the
fiduciary duties owed to plaintiffs cannot be reconciled with their repeated allegations that ZCM owes these duties
*because* of its actions taken pursuant to the Option Agreement.

[20]    This fact is proven by the very cases cited by plaintiffs in support of their arguments, each of which
involves a challenge by *a party* to the contract at issue.

Even if plaintiffs had standing, their new arguments are frivolous. *First*, they assume facts that are not alleged in the complaint or even asserted in plaintiffs' opposition brief. Indeed, neither plaintiffs nor Asset Allocation allege (and cannot in good faith allege) that ZCM fraudulently induced Asset Allocation to enter into the Option Agreement or otherwise perpetrated a fraud on Asset Allocation. *Second*, the cases cited by the limited partners in support of these arguments are totally inapposite. *Midland Mgt. Corp. v. Comp. Consoles, Inc.*, 1992 WL 281354 at *3 (N.D. Ill. 1992) involves a refusal to exclude evidence of additional representations made by defendant to plaintiff in a claim for fraud where the contract between plaintiff and defendant contained a merger clause. *Mother Earth, Ltd v. Strawberry Camel, Ltd.*, 72 Ill. App. 3d 37, 390 N.E.2d 393, 406 (1st Dist. 1979) held that a merger clause was irrelevant to plaintiff's claim for fraud when plaintiff proved that defendant made additional fraudulent misrepresentations. *Spartech Corp. v. Apelco, Inc.*, 1986 WL 10365 at *2 (N.D. Ill. 1986) found that a contractual statute of limitations pertaining to disputes over terms of the contract was irrelevant in an action alleging fraudulent inducement to enter into the contract. *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill. App. 3d 594, 602, 503 N.E.2d 1045, 1050 (1st Dist. 1986) denied a motion to quash service of process on a subsidiary where a parent company disclaimed the agency of its subsidiary. And *Caiola*, 2002 WL 1401478 involved claims for securities fraud based on oral misrepresentations not precluded by a non-reliance provision in a swap agreement. Accordingly, as made plain in ZCM's opening brief, the written disclaimer of any fiduciary duties owed by ZCM should be enforced in accordance with its terms.

C.     **Plaintiffs Fail to Allege Breach.**

Plaintiffs do not even attempt to rebut ZCM's additional, independently dispositive arguments (at 26-27 of ZCM's opening brief) that (1) the allegations of breach are expressly

29

negated by the other allegations of, and the documents attached to, the complaint; and (2) plaintiffs failed to overcome the governing state law presumption against fiduciary duties arising from arm's-length contracts.

Nor do they offer any substantive response to ZCM's argument that the actions alleged to constitute a breach of duty to Asset Allocation and its limited partners are expressly authorized by the contract between ZCM and Asset Allocation and this Court's PI Order. Under the rule of *LID Assocs. v. Dolan*, 324 Ill. App. 3d 1047, 1062-63, 756 N.E.2d 866, 880 (Ill. App. Ct. 2001), acts that are expressly permitted by an agreement between the parties who allegedly owe and are owed the fiduciary duties – there, the general partner and limited partners' limited partnership agreement -- cannot constitute the basis for a breach fiduciary duty claim. Here, the alleged source of ZCM's fiduciary duties to Asset Allocation (and hence its limited partners), is the Option Agreement. Accordingly, because the limited partners do not allege any acts relating to Asset Allocation that were taken by ZCM outside the scope of its authorization under the Option Agreement, the claim of breach of fiduciary duty necessarily fails.

**D.    Plaintiffs' Attempt to Amend Their Proximate Cause Allegations is Futile.**

In its moving brief, ZCM showed (at 26-27) that the claim was insufficient on its face because the injuries alleged by Plaintiffs (Compl. ¶ 88), *i.e.*, the loss of value of their partnership interests, were proximately caused by the Six Sigma fraud itself, and not by the Option Agreement, ZCM's acts, or the subsequent assignment to ZCM of *MJFA's* bankruptcy claim against Six Sigma pursuant to this Court's PI Order.[21]

---

[21]    The limited partners also allege that they somehow suffered a loss as a result of ZCM's investments in Six Sigma that ZCM made on its own behalf to hedge its exposure under the option agreement. Compl. ¶¶ 88(e). Asset Allocation's limited partners certainly have no legal basis on which to sue ZCM for losses that *ZCM* alone sustained as a result of *its own* investments in Six Sigma.

Plaintiffs again seek to shift the target and now assert (*e.g.* at 1) that ZCM "exacerbated" the losses caused by the Six Sigma fraud by "mis-allocating" two-thirds of the loss to Asset Allocation and its investors.   Even if the Court were to entertain these new assertions as amended allegations, the claim does not work.  Both the complaint and opposition brief admit that it was MJCM, as general partner of Asset Allocation, that (1) selected the Six Sigma investment, and (2) chose to leverage the scale of that investment by entering into the Option Agreement.  Compl. ¶ 33, Compl. Ex. 1, p. 13 ("The General Partner is currently considering the use of leverage for the Fund"); Opp. Br. at 1 ("This case involves a[] . . . "swap" that Asset Allocation . . . was put into in May 2000 by the Fund's general partner") and 4 ("on May 31, 2000, [MJCM] took a completely different tack by putting the Fund into a "swap" . . . with ZCM).  Accordingly, plaintiffs fail to allege that ZCM was the proximate cause of their injuries.[22]

For all these reasons, Count IV should be dismissed with prejudice.

## VII.   COUNT V FAILS TO STATE A CLAIM FOR INDUCEMENT OF BREACH OF FIDUCIARY DUTY.

In apparent anticipation of the dismissal of Count IV, plaintiffs argue (at 34) that "Count V states an alternative claim for inducement of breach of fiduciary duty."   Count V fails for the same reasons regarding lack of standing and lack of proximate causation as Count IV.

In addition, Count V fails for the independent reasons that plaintiffs fail to allege (1) a breach of a fiduciary duty; (2) ZCM's knowing participation in or inducement of the breach; or (3) ZCM's knowing acceptance of benefits from the breach, ZCM Br. 27-31.

---

[22]     This argument concerning the proximate cause of Plaintiffs' alleged injuries is hereby made with respect to Counts I-III, V-VIII as well.

31

## A.    Plaintiffs Fail to Allege Breach by MJCM.

Plaintiffs do not rebut the argument that most of the acts of MJCM, upon which their allegations of breach are based, including entering into an option contract, assigning fund interests in payment of an investment liability, and leveraging the fund's investments, are expressly permitted by, or disclosed in, the Asset Allocation PPM.  ZCM Br. 20.[23]

As a matter of law, MJCM did not relinquish control and authority to ZCM under the terms of the Option Agreement.  *See* Point I, above.

With respect to the transfer of MJFA's Six Sigma bankruptcy claim to ZCM, plaintiffs repeat the allegation that "Asset Allocation[] relinquish[ed] control of the limited partner's claims arising from the collapse of PinnFund."  That allegation that is unequivocally negated by (1) this Court's PI Order, which directs MJCM to assign to ZCM the bankruptcy claim of MJFA (*not* of Asset Allocation) against Six Sigma; and (2) the Option Agreement itself, which makes clear that, at all relevant times, ZCM – and *not* Asset Allocation – had sole right, title and interest to the assets of MJFA.[24]

Plaintiffs simply fail to address, much less rebut, ZCM's argument (at 28) that the transfer of MJFA's bankruptcy claim to ZCM cannot, as a matter of law, constitute a breach of

---

[23]    The PPM, attached to the complaint as Exhibit 1, provides: (1) "The Fund engages, directly and indirectly, in the speculative trading of (a) . . . option contracts . . . and (b) securities . . . The investment decisions of the Fund have been delegated to [MJCM] who is the Fund's General Partner (p. i); (2) The Fund is authorized to trade on margin and to transfer fund assets to meet margin requirements (pp. v, 13, 29); (3) "The General Partner may, from time to time, add or remove advisors [and] change assets allocated to the current advisors" (p. 1); (4) "The fund may in the future require a Clearing Broker to execute the Fund's trades and have custody of some of its assets. . . . [Clearing Brokers are permitted] to liquidate positions in the Fund's trading accounts" and "to raise margin requirements for the accounts, at any time without prior notice" (p. 10); (5) the General Partner is authorized to use substantial leverage - *"[I]f leverage is used, brokerage expenses could increase . . . The General Partner is currently considering the use of leverage for the Fund"* (p. 13), explaining risk of using "Substantial Leverage" (p. 15); (6) "The General Partner, to the exclusion of all other partners, shall conduct and manage the business of the Partnership including, without limitation, the investment of the funds of the partnership" (p. A-2).

[24]    It is further negated by other allegations in the complaint.  *E.g.,* Compl. ¶¶ 32-34 (stating that, pursuant to the Option Agreement, title to the relevant assets which included all interest in MJFA, was transferred to ZCM).

32

fiduciary duty when MJCM did so in compliance with this Court's PI Order.[25]  Moreover, because the transfer was required as a matter of basic property and contract law, and because MJCM had no valid entitlement to the assets, it is absurd to assert that the transfer violated MJCM's fiduciary duties to the limited partners of Asset Allocation (who, by contrast to ZCM, had *no* valid claims of ownership to the assets).[26]

**B.  Plaintiffs Fail to Allege Inducement by ZCM.**

Contrary to the plaintiffs' suggestion, ZCM does not seek a determination as to ZCM's requisite state of mind but instead a holding that, as a matter of pleading, plaintiffs' allegations in this regard are legally insufficient.  To state a claim for knowing participation in, or intentional inducement of a breach, plaintiffs must state facts that, if proven, would show that ZCM intentionally conspired with, or induced, MJCM to breach their alleged duties. *Pappas v. Buck Consult., Inc.*, 923 F.2d 531, 542 (7th Cir. 1991); *In re Kids Creek Partners*, 212 B.R. 898, 938 (Bankr. N.D. Ill. 1997) (a "vital element . . . is that third party conspired with the fiduciaries" or "were in cahoots in some invidious scheme"); *In re Salem Mills, Inc.*, 881 F. Supp. 1109, 1117 (N.D. Ill. 1995) (defendant must know about conflict but nevertheless induce acts); *Regnery v. Meyers*, 287 Ill. App. 3d 354, 363-64, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997) (defendant liable where he personally hatched plan and convinced controlling voting trust to sell him corporate stock at below market rate); Rest. 2d Agency § 312, cmt. b ("Nor is one liable who, ignorant of the agent's duties, employs him to do acts inconsistent with them").

---

[25]  It is beyond cavil that an enjoined party must obey an injunction issued by a federal court within its jurisdiction (even if the injunction turns out on review to have been erroneous), and failure to obey such an injunction is punishable by contempt. *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967).  Accordingly, each of the limited partners' allegations at Compl. ¶¶ 88(g), 92(d), 93(c) and 94, is made in violation of public policy.

[26]  As noted in ZCM's opening brief (at 20 & n.19), the Asset Allocation PPM expressly permits MJCM to transfer fund assets to pay fund liabilities, and to enter into option agreements.  Certainly, the limited partners are not challenging the fund's right, ability or need to pay money in order to obtain an option.  Thus, there is absolutely no basis to argue that the fund's decision to pay for its option by assigning the funds' interests in various securities, rather than by liquidating those securities and paying for the option with the resulting cash, violates the PPM.

In its moving papers (at 28-30), ZCM shows that plaintiffs fail to plead adequately the requisite intent on the part of ZCM. ZCM does not "plead ignorance" as that is not ZCM's duty at this stage. Rather, ZCM directs this Court's attention to the necessary allegations that plaintiffs failed to make. Plaintiffs do not even claim they can cure this deficiency if granted leave to amend. Indeed, if anything, the repeated admissions in their opposition brief (at 1, 4) that MJCM, as general partner, "put" Asset Allocation into the Option Agreement negate any allegations or inference of inducement on the part of ZCM.

### C. The Alleged Benefit to ZCM Is Negated By Public Documents.

Here again, plaintiffs attempt to dissuade the Court from taking judicial notice of a court document that negates the necessary allegation that ZCM benefited from its contract with Asset Allocation. ZCM is not asking the Court to take as true the allegations in ZCM's complaint against Asset Allocation, but to take notice of the fact that such a complaint has been filed alleging that, as a result of ZCM's relationship with MJCM, ZCM suffered damages in excess of $23 million.

As plaintiffs do not state and cannot state a claim for knowing inducement of, or participation in, a breach of fiduciary duty, Count V should be dismissed with prejudice.

## VIII. COUNTS VI AND VII (INTENTIONAL AND NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS) SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs fail to state a claim for intentional interference with contractual relations, and their purported claim for negligent interference with contractual relations based on alleged economic damages does not exist under Illinois law.

### A. Plaintiffs' Allegations of Knowledge and Breach Are Insufficient.

In their brief (at 35), plaintiffs merely repeat their conclusory allegation that "[a]t all material times, [ZCM] had knowledge of the contracts between Plaintiffs[] and Asset

34

Allocation." But Plaintiffs do not allege *facts* showing that ZCM had knowledge (1) of the specific contracts between Plaintiffs and Asset Allocation, or (2) that the contract terms in any way conflicted with the Option Agreement. Indeed, the documents themselves show that there was no conflict in terms and no breach of the Asset Allocation limited partnership agreements. ZCM Br. 27-28 & n.20, and *supra*.

### B. Plaintiffs Fail to Allege Inducement by ZCM.

Plaintiffs do not plead all necessary elements of their claim. It is settled law that claims of inducement of breach must show that the interference with contract was "caused" by the defendant. *E.g.*, *In re Douglas Dunhill, Inc.*, 22 B.R. 953, 957 (Bankr. N.D. Ill. 1982) (one who "enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person" has not induced a breach); *Farley v. Kissell Co.*, 18 Ill. App. 3d 139, 147, 310 N.E.2d 385, 390 (Ill. App. Ct. 1974) (The defendant must "have caused the interference. It is not enough that he merely reaped the advantages of the broken contract" or that his conduct "has the unintended effect of deterring the third person" from honoring the contract).

Moreover, plaintiffs' attempt to read the element of intent out of the tort called "intentional interference with contract" is untenable. Although plaintiffs acknowledge (at 36) that "some active persuasion, encouragement, or inciting" of the breach is necessary, they fail to acknowledge that ZCM cannot have induced any breach where MJCM first approached ZCM to enter into the alleged offending contract. Their position is not supported by *Wilson v. Pope*, 1996 WL 735576, upon which plaintiffs rely,[27] and is in fact expressly negated by *Farley*, *In re Douglas Dunhill, Inc.*, Rest. 2d Torts § 766, cmts. h and n, and the very name of the tort itself.

---

[27] There, plaintiffs alleged that *the defendant solicited the business from the company* knowing that any resulting agreement would clearly conflict with the plaintiff's contract. *Id.* at *4.

C.    **Plaintiffs Negate Their Own Allegations of Proximate Cause.**

What plaintiffs refer to as ZCM's passing reference to damages is actually the proper

incorporation by reference of ZCM's argument that plaintiffs fail to allege that ZCM's acts were

the proximate cause of plaintiffs' alleged injuries.  ZCM Br. 26-27 & n.19 (noting that argument

applies equally to Counts I-III and V-VIII) and *supra* Sections I(E)(2) and VI(D).

For all these reasons, Count VI should be dismissed with prejudice.

D.    **Illinois Law Does Not Recognize a Cause of Action for Negligent Interference
      With Contract Alleging Only Economic Damages.**

Under governing Illinois law, it is well settled that there is no cause of action for

negligent interference with commercial contracts when only economic damages are alleged.

*Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*, 74 F.3d 778, 785 (7th Cir. 1996); *Kurtz v. Illinois*

*Nat'l Bank of Springfield*, 179 Ill. App. 3d 719, 729, 534 N.E.2d 1007, 1013-1014 (Ill. App. Ct.

1989) (listing cases); *Santucci Const. Co. v. Baxter & Woodman, Inc.*, 151 Ill. App. 3d 547, 551-

52, 502 N.E.2d 1134, 1137-38 (Ill. App. Ct. 1987) (listing cases); Rest. 2d Torts § 766C; Prosser

& Keeton, *Torts* § 129, at 982 (5th ed. 1984).  Plaintiffs refuse to acknowledge this controlling

precedent and do not even attempt to argue for the reversal of the existing law.

Instead, plaintiffs cite (at 37) the inapposite cases of (1) *Am. Transp. Co. v. U.S. Sanitary*

*Specialties Corp.*, 2 Ill. App. 2d 144, 118 N.E.2d 793 (Ill. App. Ct. 1954), a half-century-old

decision that was expressly distinguished and otherwise rejected by the Appellate Court of

Illinois, *see Kurtz*, 534 N.E.2d at 1013-1014; and (2) *Lowe Excavating Co. v. Int'l Union of*

*Operating Engineers Local No.150*, 327 Ill. App. 3d 711, 714, 765 N.E.2d 21, 25-26 (2d Dist.

2002), where the legal existence of a cause of action for negligent interference was neither raised

nor addressed and the trial judge dismissed the claim by directed verdict.   In addition to the

dismissal of this claim with prejudice, ZCM respectfully requests that this Court consider issuing

36

*sua sponte* an order to show cause why plaintiffs should not be sanctioned pursuant to Fed. R.

Civ. P. 11(b) & (c) in this regard.

## IX. COUNT VIII (AIDING AND ABETTING COMMON LAW FRAUD) SHOULD BE DISMISSED WITH PREJUDICE.

### A. Plaintiffs Fail to Allege ZCM's Participation in a Fraud.

Plaintiffs' reliance on *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir.

2000), in support of the sufficiency of their allegations, is misplaced. The Court there actually

reaffirmed this Circuit's holding in *Cenco Inc. v. Seidman & Seidma,* 686 F.2d 449, 453 (7th Cir.

1982), that no separate tort exists for aiding and abetting common law fraud. Rather, a defendant

can be found guilty of the tort of common law fraud if he would otherwise be guilty of the crime

of aiding and abetting that fraud. Therefore, because anyone liable for aiding and abetting a

fraud must be "a participant in the fraud," 686 F.2d at 453, the limited partners cannot escape

their obligation – which they cannot satisfy -- to allege facts showing ZCM's actual participation

in the alleged fraud.

### B. Plaintiffs Fail to Allege a Predicate Act of Common Law Fraud

Plaintiffs allege (Compl. ¶ 105) that the Allamian Defendants commited common law

fraud by making (1) false and materially incomplete statements of material fact; (2) known or

believed by them to be false; (3) intended to induce plaintiffs to invest in Asset Allocation; (4)

acted upon by plaintiffs in reasonable reliance upon the truth of those representations; and (5) to

the substantial damage of plaintiffs. In support of this allegation, plaintiffs incorporate by

reference all prior allegations in this regard. Compl. ¶ 104. Not only do these allegations fail to

satisfy the specificity requirements of Fed. R. Civ. P. 9(b) (*see* ZCM Br. at 6), the allegations of

the complaint fail to state a claim for common law fraud for the same reasons discussed above in

connection with the limited partners' claims for federal and state securities fraud and federal

37

commodities fraud. *First*, no material misrepresentations or omissions were made. *See* Section I(E) of ZCM's opening brief and above. *Second*, Plaintiffs fail adequately to plead scienter on the part of the Allamian Defendants. *Id.* *Third*, any allegations of justifiable reliance or injuries proximately resulting therefrom are negated by other allegations in the complaint and the documents attached thereto. *Id.* and Section VI(D). Accordingly, plaintiffs fail to state a predicate act of common law fraud and Count VIII must be dismissed. *PRM Realty Group v. Wood*, No. 02 C 3396, 2002 WL 1792063, *2 (N.D. Ill. Aug. 5, 2002); *Citizens Sav. & Loan Ass'n v. Fischer*, 67 Ill. App. 2d 315, 322-23, 214 N.E.2d 612, 616-17 (Ill. App. Ct. 1966).

For all these reasons, Count VIII should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, ZCM respectfully requests that the complaint be dismissed in its entirety with prejudice.

Dated: October 1, 2002

Respectfully submitted,

ZCM ASSET HOLDING COMPANY (BERMUDA)
LIMITED, ZURICH CAPITAL MARKETS INC.,
ZCM MATCHED FUNDING CORP., ZCM ASSET
HOLDING COMPANY LLC,

By: _____
     Alan B. Vickery
     Philippe Z. Selendy
     Courtney R. Rockett
     BOIES, SCHILLER & FLEXNER LLP
     570 Lexington Avenue
     New York, New York 10022
     (212) 446-2300

     David P. Sanders
     Chadwick O. Brooker
     JENNER & BLOCK, LLC
     One IBM Plaza
     Chicago, Illinois 60611
     (312) 222-9350

     *Counsel for ZCM*

# SEE CASE FILE FOR EXHIBITS