# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3223 | **DATE** | 1/22/2003 |
| **CASE TITLE** | 766347 Ontario vs. Zurich | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss Plaintiffs' Amended Complaint (R. 18-1) is granted in part and denied in part. Counts One and Three are dismissed without prejudice. Counts Four, Five, Seven and Eight are dismissed with prejudice. Plaintiffs have until March 10, 2003 to file a Second Amended Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

JAN 2 3 2003

Document Number

33

U.S. DISTRICT COURT
CLERK
03 JAN 22 PM 1:28

766347 ONTARIO LTD.; THE JAMES F. )
BOUGHNER FOUNDATION; ELLEN )
FRYMIRE; and SALATEEN )
INTERNATIONAL LTD., )
                             )
           Plaintiffs, )
                             )
         v. )     No. 02 C 3223
                             )
ZURICH CAPITAL MARKETS INC., )
et al., )
                             )
         Defendants. )

**DOCKETED**

JAN 2 3 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

        Defendants have moved to dismiss Plaintiffs' First Amended Complaint for failure to

state a claim upon which relief can be granted. For the reasons set forth below, Defendants'

motion is granted in part and denied in part.

### BACKGROUND

        This is an action arising out of Plaintiffs' purchase of various interests in a limited

partnership called Asset Allocation. Plaintiffs lost the majority of their investments in Asset

Allocation and now seek to recover them. Plaintiffs allege in essence that they were defrauded

by Asset Allocation, its general partner and employees, and Defendants into purchasing limited

partnership interests, and that Plaintiffs would not have purchased those interests had they known

the details of Defendants' agreements with Asset Allocation.

33

Plaintiff's First Amended Complaint contains eight counts. Count One alleges control person liability in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5. Count Two is a claim for liability under the Illinois Securities Law of 1953, 815 ILCS 5/12 and 5/13. Count Three alleges that Defendants aided and abetted a commodity pool fraud in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6o and 25(a)(1). Count Four alleges that Defendants breached their fiduciary duties. Count Five alleges that Defendants participated in or induced a breach of fiduciary duties owed to Plaintiffs. Count Six is a claim for intentional interference with contractual relations, and Count Seven is based on negligent interference with contracts. Finally, Count Eight alleges that Defendants aided and abetted common law fraud and deceit.

The following are plaintiffs in this case: 766347 Ontario Ltd., (Ontario"), The James F. Boughner Foundation ("Boughner Foundation"), Ellen Frymire ("Frymire") and Salateen International Ltd. ("Salateen"). Ontario and Boughner Foundation are Canadian corporations. James Boughner is the principal officer of both of these corporations. Frymire is a citizen of the State of Illinois and a resident of the Bahamas. James Cone is Frymire's husband. Salateen is a Bahamian corporation with Cone as one of its principal officers. Each Plaintiff is a limited partner that invested in the Asset Allocation Fund, L.P. ("Asset Allocation").

Defendants Zurich Capital Markets Inc. ("Zurich"), ZCM Matched Funding Corp. ("ZCM MFC"), ZCM Asset Holding Company LLC ("ZCM Asset") are Delaware corporations. Defendant ZCM Asset Holding Company (Bermuda) Ltd. ("ZCM Bermuda") is a Bahamian corporation. ZCM MFC, ZCM Asset, ZCM Bermuda are wholly owned subsidiaries of Zurich, and ZCM Asset Holding Company is an affiliate of Zurich. Defendants M.J. Diversified Fund,

2

L.P. ("MJD") and M.J. Financial Arbitrage, L.P. ("MJFA") are dissolved limited partnerships. (Collectively, all of the Defendants are referred to as "ZCM" or the "Defendants").

### A. The Asset Allocation Limited Partnership

Asset Allocation is a limited partnership with Martin James Capital Management, Inc. ("MJCM") as its general partner. Martin James Allamian owned and operated MJCM, and James Manning and Robert Paszkiet were its officers and employees. Asset Allocation traded commodity futures contracts and other securities. Asset Allocation sold limited partnership interests to each of the Plaintiffs. It used various documents in selling and marketing these interests, including a Prospectus or Confidential Private Placement Memorandum ("PPM") and a limited partnership agreement. Plaintiffs allege that they relied on this documentation in purchasing their interests.

The PPM represented that Asset Allocation's investment decisions had been delegated to MJCM. "Currently [Asset Allocation] is invested with M.J. Select Global, Ltd., Piedmont Partners, L.P. and M.J. Financial Arbitrage, L.P. All the investments are funds." (R. 15-1, Pls.' First Am. Compl. ¶ 29.) It also noted that "[t]he General Partner will notify the Limited Partners of changes in Advisors, in advance when feasible." (*Id.*.) Furthermore, the PPM explained that the limited partners could redeem their investments "as of the end of any month with 30 business days prior written notice to the [Asset Allocation]." (*Id.*)

The limited partnership agreement explained that MJCM "shall conduct and manage the business" of Asset Allocation "to the exclusion of all other partners," including "the investment of the funds of the partnership." (R. 15-1, Pls.' First Am. Compl. ¶ 31.) It also represented that Asset Allocation's assets "will not be commingled with assets of any other party." (*Id.*)

3

### B. Commodity Pool

Asset Allocation was a commodity pool regulated under the Commodity Exchange Act, 7 U.S.C. §1 *et seq.* (R. 15-1, Pls.' First Am. Compl. ¶ 15.) Indeed, the PPM describes Asset Allocation as "a limited liability, open-ended investment company/commodity pool." The PPM describes MJCM as Asset Allocation's "General Partner and Commodity Pool Operator." (*Id.* ¶ 24.) MJCM was registered with the National Futures Association ("NFTA") and the Commodity Futures Trading Commission ("CFTC") as a "commodity pool operator." (*Id.* ¶ 25.) Pursuant to the requirements of the CEA, Allamian, the owner/operator of MJCM, was registered with the CFTC as an "associated person" and "principal" of MJCM. (*Id.* ¶ 26.) The PPM, Plaintiffs allege, is a commodity pool disclosure document as defined by the CFTC's commodity pool regulations. (*Id.* ¶ 18.) Plaintiffs allege that none of the Defendants registed with the CFTC or the NFTA as required under the CEA.

### C. The Swap Agreement

On May 31, 2000, after the PPM was created but *before* the Plaintiffs invested in Asset Allocation, ZCM and Asset Allocation entered into a "Swap Agreement." Plaintiffs allege that the purpose and effect of the Swap was "to transfer ownership and control of all of Asset Allocation's investments to ZCM." (R. 15-1, Pls.' First Am. Compl. ¶ 32.) The subject of the Swap was the "Reference Portfolio," which consisted of all of the assets of Asset Allocation. The Swap Agreement "vested absolute control in ZCM over Asset Allocation investment decisions by providing that ZCM 'shall have absolute control over allocation decisions with respect to the Reference Portfolio.'" (*Id.* ¶¶ 34-35.) The Swap Agreement also "required Asset Allocation to obtain the consent of ZCM before making any proposed changes to the Reference

Portfolio." (*Id.* ¶ 35.) Plaintiffs further contend that this transfer was "[c]ontrary to the provisions of the Asset Allocation offering documents." (*Id.*)

Pursuant to the Swap Agreement, ZCM "gained control and ownership of the Asset Allocation funds without any exposure to downside risk, while earning excessive interest rates substantially over the market rate." (R. 15-1, Pls.' First Am. Compl. ¶ 37.) Plaintiffs allege that ZCM used Asset Allocation's funds to make "extensive additional investments in various assets in their own name, but at the sole and exclusive risk of Asset Allocation and the limited partners therein." (*Id.* ¶ 39.) ZCM "possessed actual ownership of Asset Allocation's entire investment portfolio, possessed absolute discretion over any and all investment allocation decisions by MJCM on Asset Allocation's behalf, and in fact exercised that discretion and control by making and managing those investments of Asset Allocation." (*Id.* ¶ 42.)

### D. Plaintiffs' Purchase of Partnership Interests

In 2000, Plaintiffs purchased substantial limited partnership interests in Asset Allocation without knowledge of the Swap Agreement, its terms, or any involvement of ZCM. On June 20, 2000, Ontario invested $500,000 in Asset Allocation, and in August 2000, it invested $159.94. (R. 15-1, Pls.' First Am. Compl. ¶ 53.) On August 1, 2000, The Boughner Foundation invested $510,548.66. (*Id.* ¶ 53.) On October 1, 2000, Frymire invested $336,862.52. (*Id.* ¶ 57.) On November 1, 2000, Salateen International invested $999,985. (*Id.* ¶ 58.)

Plaintiffs allege that MJCM, Martin James Allamian, James Manning and Robert Paszkiet solicited them to invest in Asset Allocation after the Swap Agreement was effective. (R. 15-1, Pls.' First Am. Compl. ¶ 50.) "Those solicitations included, among other things, the delivery of the Asset Allocation offering documents, and limited partnership agreements . . . "

(*Id.* ¶ 51.) None of these documents disclosed the Swap Agreement or ZCM's involvement with Asset Allocation's investment decisions. Accordingly, Plaintiffs allege that Asset Allocation's offering documents were materially false and incomplete. (*Id.* ¶ 63.) They further allege that the ZCM Defendants were aware of the terms, conditions and limitations of the Asset Allocation offering documents, and were aware that the Swap Agreement violated the terms of these documents. (*Id.* ¶45). Nonetheless, Plaintiffs claim that Defendants did nothing to correct the material misrepresentations and omissions in the offering documents.

In addition, Plaintiffs allege that they relied on various oral representations regarding Asset Allocation. James Boughner claims that he relied on representations made by John Waldock who "spoke repeatedly with agents and employees of" MJCM. (R. 15-1, Pls.' First Am. Compl. ¶¶ 54-55.) Similarly, James Cone asserts that he relied on representations made by agents and employees of MJCM, including Allamian and Manning. (*Id.* ¶ 59.) None of the MJCM agents or employees informed Waldock or Cone of the nature of Asset Allocations' relationship with the ZCM Defendants. (*Id.* ¶¶56, 60). In addition, in at least June and October 2000, Plaintiffs were informed that no more than 15% of the assets of Asset Allocation were invested with any one trading advisor. (*Id.* ¶ 61.) In fact, at the time these representations were made, "(1) ZCM owned and controlled 100% of Asset Allocations investments, and (2) substantially more than 15% of the assets held by ZCM had been invested in PinnFund and its related entities through a series of pyramiding investments using either defendants MJD or MJFA or both." (*Id.* ¶ 62.)

6

Finally, Plaintiffs allege that the representations in the limited partnership disclosure documents and limited partnership agreement that each limited partner could redeem all or part of the units that partner held as of the end of any month with 30 days prior notice were false. Plaintiffs argue that ZCM controlled all assets held by Asset Allocation and that the Swap Agreement could only terminated quarterly. (R. 15-1, Pls.' First Am. Compl. ¶ 64.) Plaintiffs assert that no one informed them of ZCM's control prior to investing in the limited partnership.

## ANALYSIS

### I.    LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 952 (N.D. Ill. 1998). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

The Court views all the facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2002 WL 31269485, at *3 (N.D. Ill. Oct. 9, 2002). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). The complaint, however, must allege that

each element of a cause of action exists in order to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Furthermore, a plaintiff "cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims." *Collins v. Snyder*, No. 02 C 4493, 2002 WL 31749173, at *1 (N.D. Ill. Dec. 2, 2002) (citations and quotations omitted).

## II.    COUNT ONE – CONTROL PERSON LIABILITY

Count One alleges a violation of Section 20(a) of the Securities and Exchange Act of 1934. Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

In order to state a Section 20(a) claim, Plaintiffs must allege: (1) a primary securities violation; (2) that the ZCM Defendants exercised general control over the operations of Asset Allocation and/or MJCM; and (3) that the ZCM Defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). *See also Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1138-39 (7th Cir. 1992); *In re Westell Tech., Inc. Sec. Litig.*, No. 00 C 6735, 2001 WL 1313785, at *12 (N.D. Ill. Oct.26, 2001).

Because Plaintiffs' Section 20(a) claim is one of fraud, Plaintiffs must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud . . . with particularity." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). As the Seventh Circuit has explained, "this means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The particularity mandate requires "the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Defendants argue that the Court should dismiss Count One for failure to state a claim for control person liability under Section 20(a) on the following grounds: (1) Plaintiffs fail to allege control or scienter; (2) Plaintiffs fail to allege a predicate securities fraud violation; and (3) Plaintiffs' claim is barred by the statute of limitations.

## A. Control Liability

Defendants argue that Plaintiffs cannot allege that ZCM had any control over the day to day operations of Asset Allocation or MJCM. Plaintiffs counter that the terms of the Swap Agreement establish ZCM's control.

### 1. General Control

Plaintiffs generally allege that Defendants "actually participated in, that is, exercised control over the operations of Asset Allocation and MJ Capital Management in regard to its obligations, powers and duties for Asset Allocation." (R. 15-1, Pls.' First Am. Compl. ¶ 49.) Plaintiffs further allege that Defendants "obtained absolute control and ownership of the Asset

Allocation assets" and managed and controlled Asset Allocation via the terms of the Swap Agreement. (*Id.* ¶ 71.) The Swap Agreement gave ZCM "absolute control over allocation decisions with respect to the Reference Portfolio." (*Id.* ¶ 35.) It also required Asset Allocation to obtain ZCM's consent before making any changes to the Reference Portfolio. (*Id.*).

These allegations adequately state ZCM's general control over Asset Allocation's operations. *See Harrison*, 974 F.2d at 880 (Section 20(a) is "remedial, to be construed liberally, and require[s] only some indirect means of discipline or influence short of actual direction to hold a control person liable.") (citations and quotations omitted); *Lindelow v. Hill*, No. 00 C 3727, 2001 WL 830956 at *9 (N.D. Ill. July 20, 2001) ("Ordinarily, whether a defendant is a 'controlling person' under § 20(a) is a question of fact that cannot be determined at the pleading stage.").

Defendants suggest that the Swap Agreement amounts to a loan and thus cannot provide them with control over Asset Allocation or MJCM. In support of this argument, Defendants cite *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 949 (7th Cir. 1989), where the Seventh Circuit affirmed summary judgment holding that a bank was not a "controlling person" within the meaning of Section 20. In that case, the Seventh Circuit held that the plaintiffs failed to establish that a bank exercised control merely because it extended a loan to a company to finance its investment programs after the alleged securities violation. *Id.*

Contrary to Defendants' suggestion, *Schlifke* does not stand for the proposition that a lender can never be a control person under Section 20(a). Unlike the plaintiffs in *Schlifke*, Plaintiffs in this case do allege that Defendants exercised control at the time of the alleged violation. Moreover, Defendants' suggestion that the Option Agreement was a loan is not

10

persuasive. Plaintiffs maintain that the Option Agreement was not a loan, and viewing Plaintiffs' allegations in the light most favorable to them, this Court agrees.

### 2. Specific Control

Defendants argue that Plaintiffs' allegations of specific control do not pertain, as they must, to their control over the primary securities violations. Specifically, Defendants suggest that the primary violations are: (1) the preparation and issuance of the PPM, and (2) Asset Allocation's subsequent misrepresentations and omissions made in connection with the sale of the partnership interests. Defendants, however, claim that Plaintiffs' allegations of control pertain only to Asset Allocation's allocation of investments and actual investments.

Although the PPM was prepared and issued before ZCM and Asset Allocation entered the Swap Agreement, Plaintiffs allege that ZCM gained control over Asset Allocation *before* Plaintiffs invested and that ZCM "undertook no steps to ensure that Asset Allocation and MJ Capital Management made complete and accurate disclosure to prospective investors including Plaintiffs." (R. 15-1, Pls.' First Am. Compl. ¶ 70f.) Plaintiffs also generally allege that Defendants "possessed the power or ability to control the specific transaction on which the Rule 10b-5 violation is predicated." (*Id.* ¶ 49.) Plaintiffs make no allegations, however, regarding ZCM's role in the underlying misrepresentations or omissions set forth in the offering documents.

Plaintiffs contend that their allegations of ZCM's control over Asset Allocation's investment decisions are sufficient to satisfy their pleading requirements. Plaintiffs suggest that ZCM could have refused any changes to the Reference Portfolio in order to control the language in the PPM and other partnership documentation before those documents were provided to

Plaintiffs. Thus, Plaintiffs argue that "[i]t is easy to imagine how ZCM would have exercised that authority to ensure that Asset Allocation complied with all required disclosure requirements." (R. 25-1, Pls.' Opp. to Mot. to Dismiss, at 18.) The Court, however, should not have to "imagine" that ZCM had specific control, especially under Rule 9(b)'s heightened pleading requirements. Instead, Plaintiffs bear the burden of presenting a sufficient factual basis for a Section 20(a) cause of action. Because Plaintiffs' specific control allegations are insufficient, Count One fails to state a claim.

### B.  Scienter

Defendants further argue that Count One should be dismissed because Plaintiffs failed to allege scienter. As Plaintiffs correctly point out, however, scienter is *not* an element of a Section 20(a) claim. *See Kaufman v. Motorola, Inc.*, No. 95 CV 1069, 1999 WL 688780, at *14 (N.D. Ill. Aril 16, 1999). *See also Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F.Supp. 244, 257 (S.D.N.Y. 1992).[1]

Defendants may avoid control person liability, however, by showing that the "'controlling person' acted in good faith and did not directly or indirectly induce the act or acts constituting the violation." *Harrison*, 974 F.2d at 880 (citation omitted). Defendants bear the burden of establishing this affirmative defense. *Id.* Defendants can bring a motion to dismiss on the basis of an affirmative defense only if that affirmative defense appears on the face of the complaint. *See, e.g., Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (the "statute of limitations is an affirmative defense, and a plaintiff is not required to negate an

---

[1]  The heightened pleading requirement for scienter under the Private Securities Litigation Reform Act ("PSLRA") do not apply to claims under Section 20(a) for control person liability. *See Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001).

affirmative defense in his complaint"); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956-57 (N.D. Ill. 2002) (a plaintiff "need not anticipate or plead around affirmative defenses"); *McKee v. Brady*, No. 88 C 20035, 1990 WL 304242, at *5 n.3, (N.D. Ill. May 14, 1990) (rejecting argument that the burden shifts to plaintiff to show facts sufficient to overcome the affirmative defense of statute of limitations on a motion to dismiss).

Defendants submit that an opinion letter from Asset Allocation's legal counsel regarding the Swap Agreement "confirms that ZCM could not have acted recklessly in entering into the Option Agreement." (R. 29-1, Defs.' Reply in Support of Mot. to Dismiss, at 16.) That letter, however, is attached to ZCM's counsel's affidavit it support of its motion to dismiss. Because the letter is not part of the complaint and ZCM's good faith defense cannot be established conclusively by the complaint (taking all reasonable inferences in favor of Plaintiffs), Defendants' good faith defense fails at this stage.

## C.     The Primary Securities Violation

In order to state a cause of action for control person liability under Section 20(a), Plaintiffs must allege an underlying primary securities violation under Section 10(b). Plaintiffs must allege the following elements to state a Section 10(b) claim: (1) a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiffs justifiably relied; and (6) the false statement proximately caused Plaintiffs' damages. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). *See also Tatz v. Nanophase Technologies Corp.*, No. 01 C 8440, 2002 WL 31269485, at *4 (N.D. Ill. Oct.9, 2002). Defendants argue that Plaintiffs have failed to

13

adequately allege the following elements of the underlying securities violation: (1) a material misrepresentation or omission; (2) transaction causation; (3) loss causation; and (4) scienter on the part of MJCM or Asset Allocation.

Plaintiffs' underlying securities fraud violation is premised on representations made by MJCM, Allamian, Manning and/or Paszkiet in connection with Plaintiffs' purchase of limited partnership interests in Asset Allocation. Plaintiffs allege that Asset Allocation's offering documents contained materially false and misleading information, and that such documents were intentionally used by MJCM, Allamian, Manning and Paszkiet in connection with the sale of Asset Allocation's limited partnership interests purchased by Plaintiffs. Plaintiffs further allege that they relied on the false representations in the offering documents in purchasing their limited partnership interests in Asset Allocation.

### 1.    Material Misrepresentation or Omission

ZCM first argues that the alleged misrepresentations in the PPM cannot form the basis of the underlying securities violation because ZCM and Asset Allocation had not entered the Swap Agreement at the time the PPM was created and, therefore, the documents were truthful when they were created. By the time the PPM was actually provided to the Plaintiffs, however, the Swap Agreement had been executed. Despite this development, the PPM was not updated to disclose the existence or terms of the Swap Agreement or Asset Allocation's relationship with ZCM.

Plaintiffs allege that the PPM and limited partnership agreement falsely stated that MJCM had sole and exclusive control over Asset Allocation's investment decisions, that the general partner shall conduct and manage the investment decisions of the funds, and that Asset

14

Allocation's assets would not be commingled with any other assets. In addition, Plaintiffs allege that, contrary to the representations in the PPM and the limited partnership agreement, the Swap Agreement gave ZCM complete authority over investment decisions and the funds. Plaintiffs assert that "the statements in the limited partnership disclosure documents and limited partnership agreement that each limited partner could redeem all or part of the units that partner held as of the end of any month with 30 days prior notice were false because ZCM controlled all assets of the Fund and the Swap Agreement could only be terminated in whole but not in part on the last business day of any calendar quarter." These allegations are sufficient to state material misrepresentations and omissions in the offering documents.[2]

### 2.    Causation

Defendants argue that Plaintiffs have failed to allege transaction or loss causation. "To plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of sale. To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997).

---

[2] In addition to the representations in the offering documents, Plaintiffs also allege that they relied on representations made by the principals and employees of Asset Allocation. At the time Plaintiffs submitted their subscription agreements, Plaintiffs signed the following: "Except as set forth in the [PPM], no representations or warranties have been made to me by the Partnership, the general Partner or any agent, employee or affiliate of either of them, in entering into this transaction and I am not relying upon any information, other than that contained in such Offering Documents and the results of my own independent investigation." (R. 15-1, Pls.' First Am. Compl., Ex.1, B-2). Defendants argue that in light of this general disclaimer, Plaintiffs cannot assert a claim based on the alleged oral statements. Given that Plaintiffs have sufficiently set forth misrepresentations in the offering documents, the Court need not decide at this stage whether these alleged oral misrepresentations can form the basis of a Section 10(b) violation.

Plaintiffs allege that they "would not have invested in Asset Allocation if MJ Capital Management, Allamian, Manning, Paszkiet and/or the ZCM defendants had truthfully stated and disclosed, and had not concealed, the material facts at or prior to the time of their purchase of the Asset Allocation Limited Partnership interests." (R. 15-1, Pls.' First Am. Compl. ¶ 73.) Further, Plaintiffs allege they were in fact damaged by the alleged misstatements and omissions. (R. 15-1, Pls.' First Am. Compl. ¶ 74.) These allegations satisfy both the transaction and loss causation elements. *See Caremark,* 113 F.3d at 648-49.

### 3.   Scienter

Defendants argue that Plaintiffs have failed to allege scienter on the part of the primary violators -- MJCM and Asset Allocation. Defendants argue that even if Plaintiffs have alleged scienter, those allegations fail to satisfy Rule 9(b)'s particularity requirements and the PSLRA's heightened pleading requirements.

Contrary to Defendants' suggestion, Rule 9(b) does "not require 'particularity' with respect to the defendants' mental state." *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990). Instead, the allegations in the complaint need only "afford a basis for believing that the plaintiff[] could prove scienter." *Id. See also Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 650 n.7 (7th Cir. 1997). The PSLRA, however, does impose heightened pleading requirements for scienter. Specifically, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Seventh Circuit has not yet addressed the heightened pleading requirements for scienter under the PSLRA. But as this Court recently noted in *Wafra Leasing Corp. v. Prime*

*Capital Corp.*, No. 01 C 4314, 2002 WL 31664480 (N.D. Ill. Nov. 26, 2002), the Second Circuit has articulated a standard for scienter allegations that several other courts in this District have adopted. Under this Second Circuit standard, a plaintiff must allege either: (1) facts showing that the defendants had both motive and opportunity to commit fraud, or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Wafra Leasing Corp.*, 2002 WL 31664480, at *8. *See also Press v. Chemical Investment Serv. Corp.*, 166 F.3d 529, 538 (2nd Cir. 1999) (citations and quotations omitted); *Riggs Partners, LLC. v. Hub Group, Inc.*, No. 02 C 1188, 2002 WL 31415721, at *4 (N.D. Ill. Oct. 25, 2002); *Lindelow*, 2001 WL 830956, at *6. This Court, however, has declined to follow the Second Circuit's standard given the plain language of the PSLRA. *See Wafra Leasing Corp.*, 2002 WL 31664480 at *8. Thus, this Court has held that a plaintiff may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, so long as Plaintiffs' allegations support a strong inference that the defendant acted recklessly or knowingly. *Id.*

Plaintiffs' allegations include motive, opportunity, and circumstantial evidence of intent, but they lump those allegations together generally as to "MJ Capital Management, Allamian, Manning, Paszkiet and/or the ZCM Counter-defendants." (*See, e.g.*, R. 15-1, Pls.' First Am. Compl. ¶¶ 70-72.) Thus, Plaintiffs do not specify conscious misbehavior or recklessness on the part of the primary violators. These allegations do not give rise to a strong inference of scienter on the part of the primary violators and do not satisfy the heightened pleading requirements under the PSLRA.

## D.    Statute of Limitations

The one-year statute of limitations for federal securities claims begins to run when the potential plaintiff is put on "inquiry notice." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997). "Inquiry notice starts the running of the statute of limitations when the victim of the alleged fraud became aware of the facts that would have led a reasonable person to investigate whether he might have a claim." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995) (quotation omitted). "However, more than 'merely suspicious circumstances' must exist; instead the plaintiff must learn of a circumstance that places him 'in possession of, or with ready access to, the essential facts that he needs in order to be able to sue.'" *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998) (quoting *Fujisawa Pharm.*, 115 F.3d at 1337).

Defendants argue that each of the Plaintiffs was on inquiry notice prior to July 2000 based on various information the Plaintiffs received through documents and/or conversations. Defendants' statute of limitations argument is based primarily not on allegations from the First Amended Complaint but documents attached to a declaration by Defendants' counsel. These documents are not appropriately before the Court on this motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) ("documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss"). This is not a case where Plaintiffs have plead "facts that show [their] suit [is] barred by a statute of limitations." According, Defendants' motion to dismiss on the basis that the securities claim is untimely is denied. *See also Marks v. CDW Computer Centers, Inc.*,

122 F.3d 363, 367 (7th Cir. 1997) (inquiry notice is often a question of fact "inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).").

## III. COUNT TWO – ILLINOIS SECURITIES LAW

Defendants argue that the Court should dismiss Plaintiffs' claim under the Illinois Securities Law, 815 ILCS 5/12 and 5/13 because Plaintiffs' claims are untimely. Defendants also argue that Plaintiffs' allegations are insufficient to sate a claim under the Illinois Securities Act.

Under the Illinois Securities Act, a plaintiff must give notice of election to void and rescind their purchase or sale of securities within six months after they have knowledge that the purchase or sale is voidable. 815 ILCS 5/13(B). "The six month rule regarding notice is not a statute of limitations, but rather, an equitable feature built into the statute to protect against stale claims. Its purpose is to prevent purchasers, who have sufficient knowledge of the remedy available to them, from waiting the entire statute of limitations to decide whether to elect recission." *Martin v. Orvis Bros. & Co.*, 25 Ill.App.3d 238, 246, 323 N.E.2d 73, 79 (Ill.App.Ct. 1974). *See also Jacks v. Schneider Sec., Inc.*, 217 F.3d, 525, 527 (7th Cir. 2000).

Plaintiffs allege that they provided their statutory notice of election to void their Asset Allocation interests on or about April 3, 2002. (R. 15-1, Pls.' First Am. Compl. ¶ 78.) They further allege that this filing occurred within six months after they had knowledge that the sale of those securities was voidable. (*Id.*) Defendants suggest that Plaintiffs had constructive knowledge the sale was voidable more than six months before they gave their statutory notice of election and that Plaintiffs' claim is, therefore, untimely.

Plaintiffs have specifically alleged that they provided notice within six months after they learned that the sale was voidable, and Defendants have pointed to nothing in the First Amended

Complaint that refutes this contention. Thus, viewing Plaintiffs' allegations in the light most favorable to them, this Court concludes that Plaintiffs' claim is timely. *Fewell v. Kozak*, No. No. 98 C 2924, 1999 WL 966447, at *8 (N.D. Ill. Oct. 19, 1999) ("Knowledge that a sale of securities is voidable is a mixed question of law and fact.").

Defendants also argue that Plaintiffs' Illinois Securities Law claims should be dismissed because Plaintiffs fail to allege a material misrepresentation or omission, reasonable reliance, transaction causation and damages. This Court has already determined, however, that Plaintiffs' allegations are sufficient in that regard with respect to their federal securities law claims. Accordingly, for the same reasons, Plaintiffs do state a claim under the Illinois Securities Act.

## IV. COUNT THREE -- AIDING AND ABETTING FEDERAL COMMODITIES FRAUD

Count Three is a claim for aiding and abetting a commodity pool fraud in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6o and 25(a)(1). Defendants seek to dismiss this count on the basis that Plaintiffs have failed to allege ZCM's culpable conduct and a predicate violation.

Plaintiffs allege that Asset Allocation was an Illinois limited partnership organized as a commodity pool for the purpose of trading commodity interests and other investments. A commodity pool is "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests." 17 C.F.R. § 4.10(d)(1). Plaintiffs argue that Asset Allocation's offering documents constituted disclosure documents and therefore had to comply with the CEA. Plaintiffs allege that Asset Allocation, MJCM, Allamian, Manning and Paszkiet committed commodity fraud by failing to disclose the terms of the Swap Agreement, failing to

correct their offering materials and using the false and materially incomplete offering documents with Plaintiffs. (R. 15-1, Pls.' First Am. Compl. ¶ 84.) Plaintiffs further allege that the ZCM Defendants aided and abetted Asset Allocation, MJCM, Allamian, Manning and Paszkiet with this alleged commodities fraud.

In order to state a claim for aiding and abetting liability under the CEA, Plaintiffs must allege that ZCM: (1) had knowledge of the principal's intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective. *Damato v. Hermanson*, 153 F.3d 464, *473 (7th Cir. 1998). Because this cause of action is based on fraud, Rule 9(b)'s heightened pleading requirements apply.

## A.    Commodities Fraud Predicate Acts

Defendants contend that Plaintiffs have failed to allege a predicate violation of the CEA. Plaintiffs counter that their claim is predicated on: (1) the failure of MJ Capital Management, Allamian, Manning and Paszkiet to disclose ZCM as a principal in the disclosure documents as required under 17 C.F.R. § 4.24(e); (2) the failure of MJ Capital Management, Allamian, Manning and Paszkiet to correct the false and misleading disclosure documents as mandated by 17 C.F.R. § 4.26(c)(1); and (3) the use by MJ Capital Management, Allamian, Manning and Paszkiet of a false and materially incomplete disclosure document in violation of 17 C.F.R. § 4.26(c)(3). (R. 15-1, Pls.' First Am. Compl. ¶ 84.) Plaintiffs argue that Defendants aided and abetted these violations.

Plaintiffs base their commodities fraud in part on the CFTC's disclosure requirements. Regulation 4.24(e)(1) provides that a disclosure document must identify the name of "each principal of the pool operator." 17 C.F.R. § 4.24(e). In this case, the parties agree that Asset

21

Allocation is the commodity pool and MJCM is the commodity pool operator. Defendants argue that under Regulation 4.24(e)(1) there was no duty to disclose ZCM because it was not a principal to MJCM, the commodity pool operator.

In their opposition to the motion to dismiss, Plaintiffs suggest that "ZCM was both a 'principal' and a 'trading principal' of Asset Allocation's under the terms of the Swap Agreement." (R. 25-1, Pls.' Opp. to Mot. to Dismiss, at 11.) Plaintiffs claim that this was sufficient to trigger the disclosure requirements under Regulation 4.24(e)(1). As Defendants point out, however, the First Amended Complaint alleges that ZCM was a principal of Asset Allocation but does not allege that ZCM was a principal of MJCM. (R. 15-1, Pls.' First Am. Compl. ¶ 84(a).) Accordingly, Plaintiffs have not stated a claim for a Section 4.24(e) violation.

Regulation 4.26(c)(1) provides that "[i]f the commodity pool operator knows or should know that the Disclosure Document or profile document is materially inaccurate or incomplete in any respect, it must correct that defect." 17 C.F.R. § 4.26(c)(1). Further, Regulation 4.26(c)(3) provides that if a disclosure document is materially inaccurate, "[t]he pool operator may not use the Disclosure Document or profile document until such correction has been made." 17 C.F.R. § 4.26(c)(1). Defendants suggest that Plaintiffs have failed to allege that the PPM was false and materially incomplete. As discussed above, however, Plaintiffs have alleged that the PPM was materially inaccurate.

**B.    Intent**

Defendants argues that Plaintiffs fail to allege that Defendants had knowledge of the principals' (namely, MJCM, Allamian, Manning and/or Paszkiet) intent or that Defendants

intended to aid and abet any alleged violations. Defendants also allege that Plaintiffs have failed to allege any act committed by Defendants in furtherance of the commodities fraud.

Plaintiffs must first allege that Defendants had knowledge of Asset Allocation's intent to commit a violation of the CEA. Plaintiffs allege that Defendants had a copy of the disclosure documents and were fully aware of their terms and conditions. (R. 15-1, Pls.' First Am. Compl. ¶ 45.) Plaintiffs further allege that Defendants were "aware that the Swap Agreement violated the terms of those documents in various regards, including but not limited to, violating (i) the provisions that MJ Capital Management was granted and required to exercise exclusive control over management of Asset Allocation and over the allocation of Asset Allocation's assets, and (ii) the provisions that granted the Asset Allocation Limited Partners the right to redeem their investments within forty days of a redemption demand." (*Id.*) Plaintiffs generally allege that Defendants knew of the intent of MJCM, Allamian, Manning and/or Paszkiet to commit the commodities violations and had the intent to further those violations. (*Id.* ¶ 83.)

Plaintiffs fail, however, to allege that Defendants knew that MJCM, Allamian, Manning and Paszkiet intended to use the disclosure documents after they executed the Swap Agreement. Further, although Plaintiffs generally allege that Defendants "had the intent to further those violations [of the CEA] by MJ Capital Management, Allamian, Manning and/or Paszkiet" (R. 15-1, Pls.' First Am. Compl. ¶ 83), Plaintiffs do not provide specific allegations that Defendants intended to further the CEA violations at issue.

In addition, Plaintiffs do not allege that Defendants acted in furtherance of the commodities violations. Instead, Plaintiffs allege numerous acts by Defendants to carry out the Swap Agreement. The existence of the Swap Agreement, however, is not the alleged fraud.

Instead, it is the failure to disclose the terms of that Agreement in the Disclosure Documents and the use of the Disclosure Documents that Plaintiffs allege constitute part of the alleged commodities fraud.

Finally, Plaintiffs do not allege that the Defendants undertook any affirmative acts in furtherance of the commodities fraud. When asserting an aiding and abetting a commodities violation, the plaintiff must allege "some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture." *Weber v. E.D.&F. Man Intern'l, Inc.*, No. 97 C 7518, 1999 WL 35326 (N.D. Ill. Jan. 13, 1999). Here, Plaintiffs do not allege any such affirmative acts by Defendants. To the contrary, Plaintiffs allege that Defendants "undertook no steps to ensure that Asset Allocation and MJ Capital Management made complete and accurate disclosure to prospective investors including Plaintiffs," (R. 15-1, Pls.' First Am. Compl. ¶ 70f.)

## V. STANDING TO BRING STATE LAW CLAIMS

Defendants next argue that Plaintiffs do not have standing to bring Counts Four through Seven. Defendants contend that the limited partners do not have standing to bring these claims because they cannot seek generalized damages incurred by the limited partnership and shared by all limited partners.

Illinois courts have held that "[l]imited partners do not have a cause of action for damages to their interest in a limited partnership." *Northern Trust Co. v. VIII South Michigan Assoc.*, 276 Ill. App.3d 355, 363, 657 N.E.2d 1095, 1101 (Ill. Ct. App. 1995). *See also Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) ("There is some authority which prohibits limited partners from bringing a suit for damages against the partnership as long as the

24

partnership exists and has not been dissolved or liquidated"). When assessing whether an action is derivative of an injury suffered by the limited partnership, the courts look to whether the plaintiff must show an injury or breach of duty to the limited partnership in order to prevail. *See, e.g., Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) ("An action in which the holder [i.e., the investor] can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action. . . . An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity.") (citation and quotation omitted); *LID Asso. v. Dolan*, 324 Ill.App.3d 1047, 756 N.E.2d 866, 884 (Ill. App. Ct. 2001) ("Limited partners are in positions analogous to shareholders and cannot pursue individual actions for damages to their interests in a limited partnership.").

Counts Four and Five are based on fiduciary duties owed by Defendants to Asset Allocation, the limited partnership, and are, therefore, derivative. Accordingly, Plaintiffs do not have standing to bring these claims.[3]

Plaintiffs apparently argue that Counts Four and Five are based on the breach of fiduciary duties by a commodity pool operator to a commodity pool. Contrary to Plaintiffs' suggestion, however, Counts Four and Five do assert breach of duties owed to the limited partnership, not the commodity pool.

Plaintiffs do have standing to bring Counts Six and Seven though. With those claims, Plaintiffs allege that Defendants interfered with the contracts that the limited partners entered

---

[3] Given that Plaintiffs do not have standing to bring these claims, the Court need not address the substantive arguments Defendants have raised in support of dismissal.

with Asset Allocation, not with contracts entered by the limited partnership. Plaintiffs claim injury directly to them rather than the limited partnership, and thus, those claims are not derivative. Plaintiffs, therefore, have standing to bring Counts Six and Seven.

## VI.    COUNTS SIX -- INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In order to state a claim in Illinois for tortious interference with a contract, Plaintiffs must allege the following elements: (1) the existence of a valid and enforceable contract between Plaintiffs and another; (2) the Defendants' awareness of the contract; (3) an intentional interference by the Defendant inducing breach of contract; (4) a breach of contract caused by the Defendant's acts; and (5) damages to Plaintiff. *See Fieldcrest Builders v. Antonucci*, 311 Ill.App.3d 597, 611, 724 N.E.2d 49, 61 (Ill. App. Ct. 1999); *see also Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F.Supp.2d 953, 959 (N.D. Ill. 2002). Defendants contend that Plaintiffs have failed to allege elements two through five.

Plaintiffs allege that they entered into contracts with Asset Allocation and that "at all material times, the ZCM Defendants had knowledge of the contracts between Plaintiffs and Asset Allocation." (R. 15-1, Pls.' First Am. Compl. ¶ 98.) Plaintiffs further allege that Asset Allocation breached its contracts with Plaintiffs and that the "ZCM Defendants intentionally and without justification induced Asset Allocation to breach its contracts with Plaintiffs. (*Id.* ¶ 99.) Plaintiffs claim Defendants "intentional, unjustified, and wrongful conduct" caused the breach of the contracts. (*Id.* ¶ 100.) In addition, Plaintiffs assert that the breach via the Swap Agreement caused damages to the Plaintiffs. (*Id.* ¶ 101.) Given the liberal notice pleading requirements under the Federal Rules, these allegations are sufficient to state a claim for intentional

interference with a contract.

## VII.   COUNT SEVEN -- NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS

Illinois does not recognize a cause of action for negligent interference with commercial contracts where the plaintiff, as here, seeks to recover only economic damages. *See Great Cent. Ins. Co. v. Insurance Services Office, Inc.*, 74 F.3d 778, 785 (7th Cir. 1996) (refusing to permit claim for tortious interference with a contract based on negligent interference); *see also Kurtz v. Illinois Nat. Bank of Springfield*, 179 Ill.App.3d 719, 729, 534 N.E.2d1007, 1013 (Ill. App. Ct. 1989) (recovery for purely economic injuries not allowed in cause of action based on negligence).  Accordingly, Count Seven is dismissed.

## VIII.   COUNT EIGHT -- AIDING AND ABETTING COMMON LAW FRAUD

As Defendants correctly point out, Illinois does not recognize a separate cause of action for aiding and abetting common law fraud. *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir. 1990); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452-53 (7th Cir. 1982).

Plaintiffs suggest that *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617 (7th Cir. 2000), counsels against dismissal of their aiding and abetting claim.  In that case, the Seventh Circuit confirmed that Illinois does not have a separate tort for aiding and abetting common law fraud, noting that "[t]here is nothing to be gained by multiplying the number of torts, and specifically by allowing a tort of aiding and abetting a fraud to emerge by mitosis from the tort of fraud, since it is apparent that one who aids and abets a fraud, in the sense of assisting the fraud and wanting it to succeed, is himself guilty of fraud." *Id.*, 229 F.3d at 623.  Instead, the Seventh Circuit

suggested that a plaintiff could bring a claim for common law fraud against the one who had assisted in the alleged fraud, rather than aiding and abetting. *Id.*

Even if the Court converts Plaintiffs' aiding and abetting claim into a claim for common law fraud, Count Eight fails to state a claim. Under Illinois law, Plaintiffs must allege: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intended to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damages to the other party resulting from such reliance. *Hillman v. Resolution Trust Corp.*, 66 F.3d 141, 144 (7th Cir. 1995). Because Plaintiffs do not allege all of the elements for common law fraud, Count Eight must be dismissed.

## CONCLUSION

Defendants' motion to dismiss Plaintiffs' complaint (R. 18-1) is granted in part and denied in part. Counts One and Three are dismissed without prejudice. Counts Four, Five, Seven and Eight are dismissed with prejudice.

DATED: January 22, 2003      ENTERED

AMY J. ST. EVE
United States District Court Judge