# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3223 | **DATE** | 7/28/2003 |
| **CASE TITLE** | 766347 Ontario vs. Zurich | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. ZCM's motion to Dismiss the Second Amended Complaint is granted in part and denied in part. It is granted with respect to Count Six, and Count Six is dismissed with prejudice. It is denied with respect to all other counts. In addition, the Court dismisses Defendants M.J. Diversified Fund, L.P. and M.J. Financial Arbitrage, L.P. ("MJFA") *sua sponte* for failure to state a claim against either of them.

*Amy J St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 2 9 2003 | 49 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| 766347 ONTARIO LTD.; THE JAMES F. BOUGHNER FOUNDATION; ELLEN FRYMIRE; and SALATEEN INTERNATIONAL LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 02 C 3223 |
| ZURICH CAPITAL MARKETS INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Defendants have moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Their motion is granted in part and denied in part. In addition, the Court dismisses Defendants M.J. Diversified Fund, L.P. ("MJD") and M.J. Financial Arbitrage, L.P. ("MJFA") *sua sponte* for failure to state a claim.

## BACKGROUND

Asset Allocation Fund, L.P. ("Asset Allocation") is a limited partnership and commodity pool engaged in the speculative trading of commodity futures contracts and other securities. Martin James Capital Management, Inc. ("MJCM") is Asset Allocation's general partner. Martin James Allamian owned and operated MJCM, and James Manning and Robert Paszkiet served as its officers and employees.[1]

---

[1] In *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F.Supp.2d 974, 979 (N.D.Ill. 2003) ("*Ontario I*"), the Court discussed in detail the facts (as alleged by Plaintiffs). *See id.* at 979-982. This opinion addresses only those facts relevant to the pending motion to dismiss.

Plaintiffs 766347 Ontario Ltd., (Ontario"), The James F. Boughner Foundation ("Boughner Foundation"), Ellen Frymire ("Frymire") and Salateen International Ltd. ("Salateen") purchased limited partnership interests in the Asset Allocation Fund. Plaintiffs allege that they relied on various documents when purchasing these interests, including a Prospectus or Confidential Private Placement Memorandum ("PPM") and a limited partnership agreement. Plaintiffs also allege that the PPM is a commodity pool disclosure document as defined by the CFTC's commodity pool regulations.

Defendants include Zurich Capital Markets Inc. ("Zurich"), ZCM Matched Funding Corp. ("ZCM MFC"), ZCM Asset Holding Company LLC ("ZCM Asset"), ZCM Asset Holding Company (Bermuda) Ltd. ("ZCM Bermuda"), ZCM MFC, ZCM Asset and ZCM Bermuda. (Collectively, the Defendants are referred to as "ZCM" or the "Defendants"). Plaintiffs have also sued MJD and MJFA.

On May 31, 2000, ZCM and Asset Allocation entered into a "Swap Agreement." They entered this agreement after the PPM was created but *before* the Plaintiffs invested in Asset Allocation. The Swap Agreement "vested absolute control in ZCM over Asset Allocation investment decisions by providing that ZCM 'shall have absolute control over allocation decisions with respect to the Reference Portfolio.'" (*See* R. 34-1, Second Amended Complaint, ¶ 35.) Plaintiffs contend that this transfer was "[c]ontrary to the provisions of the Asset Allocation offering documents." (*Id.*) The Swap Agreement also "required Asset Allocation to obtain the consent of ZCM before making any proposed changes to the Reference Portfolio." (*Id.*)

In 2000, Plaintiffs made the following investments: Ontario invested $500,159.94; the Boughner Foundation invested $510,548.66; Frymire invested $336,862.52; and Salateen International invested $999,985. When Plaintiffs made these investments, neither Asset Allocation nor ZCM informed them of the Swap Agreement or ZCM's involvement with Asset Allocation's investment decisions. Furthermore, Plaintiffs allege that they relied on Asset Allocation's offering documents in making their investment decisions, and that these documents were materially false and incomplete. Although the ZCM Defendants were aware of the terms, conditions and limitations of the Asset Allocation offering documents, and were aware that the Swap Agreement violated the terms of these documents, Plaintiffs claim that Defendants failed to correct the material misrepresentations and omissions. Plaintiffs further allege that they would not have purchased Asset Allocation limited partnership interests had they known the details of ZMC's agreements with Asset Allocation. In approximately the middle of 2001, Plaintiffs lost a substantial portion of their investments in Asset Allocation. They now seek to recover these losses from ZCM.

On January 22, 2003, this Court granted in part Defendants' motion to dismiss Plaintiffs' Amended Complaint. *See Ontario I*, 249 F.Supp.2d at 979. The Court dismissed Plaintiffs' claim alleging control person liability in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5 and Plaintiffs' claim that Defendants aided and abetted a commodity pool fraud in violation of the Commodity Exchange Act, 7 U.S.C. §§ 60 and 25(a)(1), without prejudice. The Court also dismissed Plaintiffs' claims that Defendants

breached their fiduciary duties, participated in or induced a breach of fiduciary duties owed to Plaintiffs, negligently interfered with contracts and aided and abetted common law fraud and deceit with prejudice.

Plaintiffs subsequently filed a Second Amended Complaint containing eight counts: control person liability in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5 (Count One); a violation of Illinois Securities Law of 1953, 815 ILCS 5/12 and 5/13 (Count Two); aiding and abetting a commodity pool fraud in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6o and 25(a)(1) (Count Three); breach of fiduciary duties (Count Four); participating in or inducing a breach of fiduciary duties (Count Five); intentional interference with contractual relations (Count Six); negligent interference with contracts (Count Seven); and aiding and abetting common law fraud and deceit (Count Eight).

## ANALYSIS

**I.    Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the sufficiency of the complaint, not to decide the merits" of the case. *Triad Associates, Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (citations omitted). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would

4

plaintiff's allegations entitle him to relief. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999).

## II.     Arguments That the Parties Did Or Might Have Raised Earlier

As an initial matter, both parties ask the Court to reconsider various prior rulings in this case. The Seventh Circuit has repeatedly cautioned that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992) ("[M]otions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."). Thus, it is clear that motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling. *Scharlte v. Motorola, Inc.*, No. 93 C 5508, 1994 WL 323281, at *1 (N.D. Ill. June 24, 1994). Both parties have failed to meet this heavy burden for all but one argument (which is discussed below), and thus, the Court will not revisit those rulings here.

In addition, ZCM has raised new arguments that they could have, but did not, raise in either of their previous motions to dismiss. Federal Rule of Civil Procedure 12(g) provides that "[i]f a party makes a motion under this rule but omits there from any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Fed. R. Civ. P. 12(g). Thus, Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising

5

arguments that the defendant failed to raise at the first available opportunity. *See Albany Ins. Co. v. Almacenadora Somex,* 5 F.3d 907, 909 (5th Cir. 1993); *see also* Wright & Miller § 1388 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment.").

ZCM contends that they raised many of these "new" arguments in their prior briefs and that the Court simply failed to address them. ZCM does not specify, however, when or where they raised any of these "new" arguments. After reviewing ZCM's briefs, the Court has identified only one argument that ZCM raised and the Court did not explicitly resolve.[2] Because ZCM did not previously raise any of the other arguments they now make, they are precluded from raising them here in their third motion to dismiss.

The Seventh Circuit's decision in *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 2000), does not provide otherwise. In *Massey,* the Seventh Circuit held that "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned *affirmative* defenses." *Id.* (emphasis added).[3] In this case, the Court is not precluding ZCM from raising new affirmative defenses, but rather from raising new arguments at the motion to dismiss stage that they could have, but did not, raise earlier.

---

[2] That issue involved whether Plaintiffs could assert a securities fraud claim based on oral representations by Asset Allocation's employees in light of the disclaimer set forth in the subscription agreement signed by Plaintiffs. Because Plaintiffs had identified other sufficient misrepresentations, the Court concluded that it did not have to resolve that issue in order to rule on the motion to dismiss. *See Ontario I,* 249 F.Supp.2d at 986 n.2.

[3] The Court notes that ZCM misquoted *Massey,* leaving out the key word "affirmative" before defenses. The Court assumes this was omission was mere sloppiness and not an intentional effort to mislead the Court.

6

## III.    Count One – Section 20(a) Claim

This Court previously dismissed Plaintiff's Section 20(a) claim for failure to allege specific control and for failure to allege an underlying securities violation. Plaintiffs suggest that this Court wrongly concluded that the heightened pleading requirements of Rule 9(b) apply to Section 20(a) control person allegations, and Plaintiffs essentially ask this Court to reconsider this prior ruling.

As noted above, however, the party seeking reconsideration bears a heavy burden. Plaintiff has not met that burden. Although Plaintiff has cited several cases holding that Rule 9(b) does not apply to Section 20(a), those opinions are not binding on this Court, and this Court is not persuaded by their reasoning. Furthermore, the Court notes that, contrary to Plaintiffs' suggestion, the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), did not conclude that Rule 8's notice pleading applies to Section 20(a) allegations. *See Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 223 F.Supp.2d 474, 488 (S.D.N.Y. 2002). Plaintiffs' Section 20(a) claim is sounded in fraud, thus Plaintiffs must meet the heightened pleading requirements of Rule 9(b). *See Wafra Leasing Corp. 1999-A-I v. Prime Capital Corp.*, 204 F.Supp.2d 1120, 1126 (N.D. Ill. 2002); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 LBS, 2002 WL 31819207 at *9 (S.D.N.Y. Oct. 10, 2002).

### A.    Specific Control

In order to state a Section 20(a) claim, Plaintiffs must allege: (1) a primary securities violation; (2) general control and (3) specific control. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). *See also Ontario I*, 249 F.Supp.2d at 983. This Court

previously found that Plaintiffs had sufficiently alleged general control, and will not revisit that

holding. The Court also found that Plaintiffs had failed to allege the requisite specific control

element of Section 20(a) liability.

In order to allege specific control, Plaintiffs must allege that ZCM "possessed the power

or ability to control the specific transaction or activity upon which the primary violation was

predicated, whether or not that power was exercised." *Harrison*, 974 F.2d at 881. The securities

fraud violation in this case is premised on the alleged misrepresentations and omissions in the

PPM, and Asset Allocation's misrepresentations and omissions made in connection with the sale

of the partnership interests to the limited partners. Thus, in order to allege specific control,

Plaintiffs must allege that ZCM had the power or ability to control these activities.

Plaintiffs strenuously argue that they have alleged specific control by ZCM over the Swap

and the allocations to the Swap. Although the Court agrees, that is not the test for specific

control in this case because the Swap Agreement is not the transaction upon which the securities

fraud violation is premised. *See Ontario I*, 249 F.Supp.2d at 984. Nonetheless, the Court

believes that Plaintiffs have sufficiently pled specific control. (Proving specific control, of

course, is another matter.)

Plaintiffs allege that ZCM had actual knowledge of the false disclosure documents and

other offering documents provided to the limited partners, and knew that MJCM, Allamian,

Manning and Paszkiet intended to use and in fact were utilizing the false offering documents to

induce the limited partners to invest. (*See* R. 34-1, Second Amended Complaint, ¶ 72(f), 74A(a),

74A(b).) Plaintiffs allege with particularity that ZCM had control over the Swap allocations,

transactions and trades, and administration of the Swap. (*See, e.g., id.* ¶ 74A.) They further

allege that "because the ZCM Defendants controlled that actual allocation and trading on behalf of Asset Allocation, the ZCM Defendants had the power and authority to refuse to enter any allocations or trades unless MJ Capital Management and Martin Allamian corrected the false and misleading Asset Allocation offering, or ceased and desisted from their use in soliciting new investments." (*Id.*, ¶ 74A(e)(v).)

Viewed in the light most favorable to the Plaintiffs, these allegations satisfy the heightened pleading requirements of Rule 9(b) for specific control. This is especially true in light of the Seventh Circuit's directive that Section 20(a) is "remedial, to be construed liberally and requiring only some indirect means of discipline or influence short of actual direction to hold a 'control person' liable." *Harrison*, 974 F.2d at 880.

### B. Good Faith Defense

Defendants may avoid control person liability by proving that the "'controlling person' acted in good faith and did not directly or indirectly induce the act or acts constituting the violation." *Harrison*, 974 F.2d at 880 (citation omitted). Defendants, who bear the burden of establishing this affirmative defense, can successfully bring a motion to dismiss based on it only if that affirmative defense appears on the face of the complaint. *See, e.g., Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (the "statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint").

ZCM argues that the Court should dismiss this count because its good faith is plain on the face of the complaint through an opinion letter authored by Andrew Allamian. The opinion letter provides:

> The Asset Allocation Fund, L.P. has taken all necessary corporate actions to enter into the Agreement.
>
> [T]he execution of the Agreements by Asset Allocation Fund, L.P. do not conflict with the Limited Partnership Agreement of Asset Allocation Fund, L.P. or contravene any law, rule or regulation of the corporate laws of Delaware or Illinois, or conflict with, result in a breach of or constitute a default under the certificate of Limited Partnerships or by-laws of Asset Allocation Fund, L.P. or the terms of any agreement by which Asset Allocation Fund, L.P. is bound.

Even assuming that the opinion letter is incorporated by reference into the Second Amended Complaint, the opinion letter does not establish ZCM's good faith as a matter of law. Plaintiffs argue that the opinion letter does not support an advice of counsel defense because it does not apply to the Swap Agreement, it does not exonerate the transaction from violations of federal law and it was controlled by ZCM. Plaintiffs further argue that the opinion letter contradicts the obvious terms of the Swap Agreement thus ZCM could not have believed or reasonably relied on the advice. They also contend that the advice was not independent because Andrew Allamian -- the brother of Martin Allamian -- provided it. Given these factual issues, the Court cannot conclude as a matter of law that ZCM acted in good faith.

## C.    Scienter

This Court previously held that Plaintiffs had also failed to allege scienter on the part of the primary violators in their underlying securities fraud claim. Instead, Plaintiffs had merely lumped their scienter allegations together as to MJCM, Allamian, Manning, Paszkiet and ZCM.

The Court held that these group allegations did not give rise to a strong inference of scienter on the part of the primary violators, namely MJCM and Asset Allocation.

The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). As the Court previously explained, a plaintiff may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, so long as Plaintiffs' allegations support a strong inference that the defendant acted recklessly or knowingly. *Ontario I*, 249 F.Supp.2d at 987.

In this case, Plaintiffs allege with particularity facts evidencing the conscious misbehavior and recklessness of Allamian, Paszkiet and Mannings.

### 1.    Allamian

Allamian was the principal and chief operating officer of MJCM. Plaintiffs allege that he controlled and "was intimately involved in all aspects of the marketing, sale and operation of Asset Allocation," including the preparation of the offering and disclosure documents pertainig to the sale of the limited partnership interests. *See* R. 34-1, Second Amended Complaint, ¶ 70a.) Plaintiffs allege that Allamian knew that Asset Allocation had offered limited partnership interests for sale to the public and it had an obligation to make full disclosure of all material facts to those solicited to invest in the partnership. (*Id.*) They allege that Allamian knew that Asset Allocation's offering and disclosure documents represented that MJCM controlled the investment allocation decisions, that investors could redeem their investments on a monthly basis and that the partnership assets were invested in certain funds and investments. (*Id.*)

Because Allamian negotiated the Swap with the ZCM Defendants, Plaintiffs also allege that he knew that the terms and conditions of the Swap Agreement gave "exclusive allocation control to the ZCM Defendants, that the Swap Agreement's provision for redemption and or termination substantially restricted and in effect terminated the monthly redemption rights granted investors by the Asset Allocation offering and partnership documents and that the ownership and title to the Asset Allocation investments had been transferred tot he ZCM Defendants." (*See* R. 34-1, Second Amended Complaint, ¶ 70a.) Given this knowledge, Plaintiffs allege that Allamian knew that the limited partnership offering and partnership documents were false and misleading, yet did not take any steps to ensure that Plaintiffs received accurate information. Plaintiffs further allege that Allamian knew that they would not have invested in the limited partnerships if they had known the terms of the Swap. (*Id.*).

### 2. Paszkiet

Plaintiffs allege that Paszkiet was MJCM's Director of Client Relations and was thus intimately involved in the marketing and sale of the limited partnership interests including the preparation, distribution and updating of the offering materials. (*See* R. 34-1, Second Amended Complaint, ¶ 70b.) Because he invested in Asset Allocation, Paszkiet was familiar with the offering documents. Plaintiffs allege that Paszkiet knew that Asset Allocation had an obligation to fully disclose all material facts in potential investors, and that Paszkiet knew that the disclosure documents represented that MJCM controlled the investment allocation decisions, that the investors could redeem their investments on a monthly basis and that the partnership assets were invested in certain funds and investments. (*Id.*)

Plaintiffs further allege that Paszkiet knew the terms of the Swap Agreement because he participated in its negotiation with ZCM, attended a May 24, 2000 meeting with ZCM where they discussed the terms of the Swap, provided ZCM with details regarding Asset Allocation and participated in the transfer of title and ownership of Asset Allocation's investments to the ZCM Defendants after they executed the Swap. (*See* R. 34-1, Second Amended Complaint, ¶ 70b.) Given his participation in these details, Plaintiffs allege that Paszkiet knew the terms of the Swap and knew that these terms rendered Asset Allocation's offering and partnership documents false and misleading. Plaintiffs allege that Paszkiet, as Director of Client Relations, had the responsibility to ensure that Asset Allocation's offering documents were materially true and accurate, but took no steps to do so. Plaintiffs also allege that Paszkiet had a substantial motive to commit the alleged fraud because the Swap transaction permitted them to increase their commissions and fees. (*Id.*, ¶ 71b.)

### 3. Manning

Further, Plaintiffs allege that strong evidence of scienter on the part of Manning (and, therefore, MJCM) exists. (*See* R. 34-1, Second Amended Complaint, ¶ 70c.) Manning served as the Senior Vice President of MJCM. Like Allamian and Paszkiet, Plaintiffs allege that Manning was closely involved in the marketing and sale of the limited partnership interests, including the preparation, distribution and updating of the offering documents. (*Id.*) Manning also invested in Asset Allocation and knew that MJCM was offering limited partnership interests to the public. Furthermore, Plaintiffs allege that Manning knew that Asset Allocation had an obligation to fully disclose all material facts to those solicited to invest. (*Id.*.) Manning also allegedly knew that the disclosure documents represented that MJCM controlled the investment allocation decisions,

13

that the investors could redeem their investments on a monthly basis and that the partnership assets were invested in certain funds and investments. (*Id.*.)

Plaintiffs contend that Manning knew the terms of the Swap and that these terms rendered the Asset Allocation offering documents materially false and misleading. (*See* R. 34-1, Second Amended Complaint, ¶ 70c.) Manning knew the Swap terms, according to Plaintiffs, because he engaged in negotiations with the ZCM Defendants, attended a May 24, 2000 meeting with the ZCM Defendants and discussed the terms of the Swap, supplied the ZCM Defendants with information regarding Asset Allocation and assisted in transferring Asset Allocation's assets to the ZCM Defendants after they entered the Swap. (*Id.*) Plaintiffs allege that Manning had a responsibility given his role in MJCM to correct the materially false and misleading limited partnership offering documents, but failed to do so or even attempt to do so. (*Id.*) Furthermore, Manning spoke to Plaintiffs and failed to disclose the details of the Swap to them. Plaintiffs also allege that Manning had a substantial motive to commit the alleged fraud because the Swap transaction permitted them to increase their commissions and fees. (*Id.*, ¶ 71b.)

The Court finds that these allegations sufficiently detail the scienter of Allamian, Paszkiet and Manning. These are more than mere conclusory allegations. Furthermore, when viewed in the light most favorable to Plaintiffs, they are not negated by the other allegations in the Second Amended Complaint. In addition, contrary to ZCM's argument, these allegations go beyond mere motivational allegations of incentive compensation. These allegations create a strong inference that the primary violators acted with the requisite intent.

## IV.  Count Three -- Aiding and Abetting Commodities Fraud

In Count Three, Plaintiffs assert a claim for aiding and abetting a commodity pool fraud in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6o and 25(a)(1) ("the CEA").  The Court previously dismissed this claim without prejudice for failure to state a Section 4.24(e) violation, for failure to allege ZCM's intent to further a CEA violation, and for failure to allege an affirmative act in furtherance of the commodities fraud.  *See Ontario I*, 249 F.Supp.2d at 989-991.

### A.  The Elements of Aiding and Abetting

Plaintiff must allege the following elements in order to state a claim for aiding and abetting liability under the CEA:  ZCM (1) had knowledge of the principal's intent to commit a violation of the CEA; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective.  *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998).  The Court previously found that Plaintiffs had failed to allege any of these elements or comply with Rule 9(b)'s heightened pleading requirements.

First, ZCM argues that Plaintiffs have still failed to allege that ZCM had knowledge of the primary violator's --Allamian, Manning and Paszkiet -- fraudulent intent.  The Court previously held that Plaintiffs had to allege that Defendants knew that MJCM, Allamian, Manning and Paszkiet intended to use the disclosure documents after they executed the Swap Agreement.  In light of that ruling, Plaintiffs now allege that "[t]he officers and employees of the ZCM Defendants who were involved in the administration of the Swap . . . were in fact aware that MJ Capital Management, Inc., Martin Allamian, James Manning and Robert Paszkiet intended to use and in fact were utilizing the false documents . . . " (*See* R. 34-1, Second

15

Amended Complaint, ¶ 74A(a). *See also id.*, ¶ 84A.) Plaintiffs further allege that ZCM

encouraged the principals to "continue to make those solicitations utilizing the false offering

documents . . . and knew that those persons intended to use and were in fact using those

documents for those purposes." (*Id.*, ¶ 74A) These allegations are sufficient.

Defendants also argue that Plaintiffs fail to allege that ZCM MFC intended to aid or abet

any violation of the CEA. Plaintiffs allege that the ZCM Defendants "had the intent to further

those violations by MJ Capital Management, Allamian, Manning and/or Paszkiet." (*See* R. 34-1,

Second Amended Complaint, ¶ 83.) They further allege that the ZCM Defendants "intended to

further the commodity pool fraud" by failing to disclose that they were principals and trading

principals of MJCM, failing to correct the disclosure document and using and false and

materially incomplete disclosure document. (*Id.*, ¶ 84A. *See also id.*, ¶ 74A.) These allegations

satisfy Plaintiffs' burden.

Finally, Defendants argue that Plaintiffs fail to allege any overt act committed by ZCM

MFC in furtherance of the principal's objective. Plaintiffs generally allege that ZCM "committed

extensive acts herein alleged in furtherance of the purposes and objectives of "MJ Capital

Management, Allamian, Manning and/or Paszkiet resulting in the fraud . . . " (*See* R. 34-1,

Second Amended Complaint, ¶ 83.) Plaintiffs also include a list of alleged overt acts in

paragraph 74A of the Second Amended Complaint. Specifically, Plaintiffs allege that ZCM

contacted the Plaintiffs to determine if the solicitation of new investors using the fraudulent

documents had resulted in new limited partner investments. (*Id.*, ¶ 74A.) They further allege

that ZCM controlled the funds received from the victims of the fraud. (*Id.*) Plaintiffs contend

that ZCM executed the subscription agreements from many investors and controlled the

allocation of the investments. When viewed in the light most favorable to Plaintiffs, Plaintiffs

have sufficiently alleged at this stage that ZCM took some affirmative acts in furtherance of the

commodities fraud and that these acts were designed to aid in the success of the venture.

**B.    Predicate Acts of Commodity Fraud**

Regulation 4.24(e)(1) provides that a disclosure document must identify the name of

"each principal of the pool operator." 17 C.F.R. § 4.24(e). Plaintiffs base one of their predicate

acts of commodity fraud on this CFTC disclosure requirement. Specifically, Plaintiffs allege that

MJCM, Allamian, Manning and Paszkiet failed to disclose that under the Swap Agreement that

the ZCM Defendants were principals and trading principals of MJCM. (*See* R. 34-1, Second

Amended Complaint, ¶ 84A.) Defendants argue that the ZCM Defendants were not principals or

trading principals as a matter of law and that, therefore, this alleged predicate act fails.

When the commodity pool operator is a corporation, the regulations define "principal" as

"any director, the president, chief executive officer, chief operating officer, chief financial

officer, and any person in charge of a principal business unit, division or function subject to

regulation by the Commission . . . and, in addition, any person occupying a similar status or

performing similar functions, having the power, directly or indirectly, through agreement or

otherwise, to exercise a controlling influence over the entity's activities that are subject to

regulation by the Commission." 17 C.F.R. § 4.10(e)(1)(i) (incorporating 17 CFR § 3.1).

The regulations define trading principals of a commodity pool operator as "a principal who

participates in making trading decisions for a pool, or who supervises, or has authority to allocate

pool assets to, persons so engaged" 17 C.F.R. § 4.10(e)(2).

17

In their Second Amended Complaint, Plaintiffs allege that the ZCM Defendants "became principals of Asset Allocation under the provisions of the CEA and Regulations promulgated thereunder." (*See* R. 34-1, Second Amended Complaint, ¶¶ 41, 44A.) They allege that the ZCM Defendants also became trading principals of MJCM. Plaintiffs allege that the ZCM Defendants "possessed the power to exercise control and did exercise control over the specific operations of Asset Allocation and/or [MCJM]." (*Id.*, ¶ 43.) They allege that the Swap Agreement transferred ownership and control of all of Asset Allocation's investments to ZCM." (*Id.*, ¶ 32). They contend that the Swap Agreement "vested absolute control in ZCM over Asset Allocation investment decisions by providing that ZCM 'shall have absolute control over allocation decisions with respect to the Reference Portfolio." (*Id.*, ¶ 35). They also claim that MJCM "transferred complete title, dominion and control of all Asset Allocation assets to the Defendants." (*Id.*, ¶ 38). Viewing these allegations in the light most favorable to the Plaintiffs, the Court cannot conclude as a matter of law that the ZCM Defendants are not principals or trading principals as defined by the Regulations.

Because Plaintiffs have cured the deficiencies identified by the Court in *Ontario I*, ZCM's motion to dismiss is denied with respect to Count Three.

V.     **Count Six – Intentional Interference with Contractual Relations**

The Court previously found that Plaintiffs had stated a claim under Illinois law for tortious interference with a contract under the liberal pleading requirements of Rule 8(a). Plaintiffs alleged that: (1) valid and enforceable contracts existed between Plaintiffs and Asset Allocation, namely the limited partnership and subscription agreements; (2) ZCM had knowledge of the contracts; (3) ZCM intentionally interfered and induced Asset Allocation to breach its

contracts with Plaintiffs through the Swap Agreements; (4) ZCM's actions caused the breach; and (5) the breach via the Swap Agreement caused damages to Plaintiffs. *See Ontario I*, 249 F.Supp.2d at 992.

ZCM now seeks to correct an error of fact not previously brought to the Court's attention regarding Count Six. Specifically, ZCM points out that Plaintiffs' allegations negate the existence of a *pre-existing* contract between Plaintiffs and Asset Allocation. Plaintiffs allege, and expressly incorporate into Count Six, that Plaintiffs did not invest in or enter into any contracts with Asset Allocation until *after* ZCM and Asset Allocation had already entered into the Swap Agreement. Given that a contract did not exist between Plaintiffs and Asset Allocation until *after* ZCM and Asset Allocation executed the Swap Agreement, the Swap Agreement could not have breached the limited partnership agreements because they did not exist at the time.

Accordingly, Count Six is dismissed with prejudice.

## VI.    Defendants MJD and MJFA

Although Plaintiffs name MJD and MJFA as Defendants, the Second Amended Complaint does not allege any wrongdoing by those Defendants. Plaintiffs argue that MJD and MJFA are named as "relief defendants" and therefore should remain pending resolution of the merits. Plaintiffs cite no authority for the proposition that private litigants (as opposed to the SEC) are permitted to sue "relief defendants." Accordingly, the Court dismisses Defendants MJD and MJFA *sua sponte*. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997)("*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading"). Even if Plaintiffs could include relief defendants in their

19

complaint, however, MJD and MJFA would not be appropriate defendants given that both entities have dissolved and no longer exist.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The motion is granted with respect to Count Six, which is dismissed with prejudice. The motion is denied with respect to all other counts. In addition, the Court dismisses Defendants M.J. Diversified Fund, L.P. and M.J. Financial Arbitrage, L.P. for failure to state a claim.

DATED: July 28, 2003                    ENTERED


AMY J. ST. EVE
United States District Court Judge